No. 57,322

THE FEDERAL LAND BANK OF WICHITA, *Appellee*, v. KENNETH D. READ and DEBORAH A. READ, *Appellants*.

(703 P.2d 777)

Opinion filed July 26, 1985.

*Carl S. Black*, of Ensign & Black, of Shawnee Mission, argued the cause and was on the brief for appellants.

*R. Michael Latimer*, of Skoog & Latimer, of Ottawa, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the landowners, defendants Kenneth D. Read and Deborah A. Read, from a judgment of foreclosure entered against them by the District Court of Franklin County in favor of the mortgagee, plaintiff the Federal Land Bank of Wichita. The only issues are whether the Federal Land Bank was required to grant to the mortgagors an administrative hearing, and to follow a policy of forbearance, before commencing foreclosure proceedings.

The Federal Land Bank of Wichita made a loan of some $760,000 to the Reads on March 5, 1979. The loan was evidenced by a note and was secured by a mortgage covering some 1200 acres of land in Franklin and Anderson Counties, Kansas. Interest was fixed at 9%, increased to 11% after default. The Reads

made their required annual payments in 1980 and 1981, but in 1982 they paid only about 25% of the amount due. Thus, from and after March 1, 1982, the loan was in default. Defendants report that much correspondence between the parties ensued, but to no avail. Some twenty-one months later, on December 14, 1983, the bank commenced this foreclosure proceeding. As of the time judgment was entered, the Reads were almost $300,000 in arrears in their payments. The amount of the judgment was $1,023,788.51, plus interest thereafter at the rate of $341.46193 per day. There is no dispute over these figures.

Prior to foreclosure, the Reads requested an administrative hearing, but the bank did not provide them with one. The Reads contend that the bank is required to do so under 12 U.S.C. § 2202 (1982) and 12 C.F.R. § 614.4441 (1985) before commencing foreclosure. 12 U.S.C. § 2001 (1982) states the congressional policy in establishing the Farm Credit System. As a part of that system, 12 U.S.C. § 2002 (1982) provides for the chartering of federal land banks and federal land bank associations by and subject to the supervision of the Farm Credit Administration. The sections of 12 U.S.C. which follow are of interest here. They read:

"§ 2201. Notice of action on application

Every applicant for a loan from an institution of the System shall be entitled to prompt notice of action on his application, and, if the loan applied for is reduced or denied, the reason for such action.

"§ 2202. Reconsideration

Any applicant who has reason to believe that the action on his application by an association failed to take into account facts pertinent to his application, or has misinterpreted or failed to properly apply the applicable law or rules and regulations governing his application, *may,* if he so requests in writing within thirty days of the date of that notice, *request an informal hearing on his application and the action of the association in reduction or denial thereof,* or the reason for such action, in person before the loan committee or officer or employee thereof authorized to act on applications under section 2033(11) or 2093(18) of this title. Promptly after such a hearing, he shall be notified of the decision upon reconsideration and the reasons therefor." (Emphasis supplied.)

These sections apply specifically to those persons who apply for loans from institutions of the System. They do not mention persons to whom loans have been granted, and who default and then seek extensions of their loans. The defendants cite no case which has construed 12 U.S.C. § 2202 to apply to defaulting mortgagors who request extensions, and our research has disclosed no such case. The statute, when read *in pari materia* with

§ 2201, appears to apply only to those whose initial loan applications have been rejected or only partially granted. If Congress wished the statute to have a broader application, it is not incapable of expressing its desire. Under the circumstances, we see no reason to give broader application to 12 U.S.C. § 2202 than the clear language of that statute requires.

12 C.F.R §§ 614.4440 and 614.4441 (1985) are patterned after 12 U.S.C. §§ 2201 and 2202. They provide:

"**§ 614.4440 Notice of action on loan application.**

"Every applicant for a loan from the Farm Credit System is entitled to a prompt notice of action on his application and, if the loan is denied or reduced, the reason for such action.

"**§ 614.4441 Applicant's right to appeal.**

"An applicant who has reason to believe he was denied credit or was offered credit in a reduced amount because the lender failed to take into account facts pertinent to his application, or misinterpreted or failed to properly apply the rules and regulations governing his application shall be entitled to an informal hearing."

These regulations, like the statutes quoted above, clearly apply only to applicants for a loan, not to requests from defaulting borrowers for extensions.

We turn now to the forbearance issue. A policy of forbearance is required by the regulation, 12 C.F.R. § 614.4510 (1985). It reads:

"**§ 614.4510 General.**

"The bank and associations that are originating lenders shall be responsible for the servicing of the loans which they make. However, loan participation agreements may designate specific loan servicing efforts to be accomplished by a participating institution. The bank board of directors shall direct the bank and associations to adopt loan servicing policies and procedures to assure that loans will be serviced fairly and equitably for the borrower while minimizing the risk for the bank and associations. Procedures shall include specific plans which help preserve the quality of sound loans and which help credit deficiencies as they develop.

. . . .

"(d) In the development of the bank and association loan servicing policies and procedures, the following criteria shall be included:

"(1) *Term loans.* The objective shall be to provide borrowers with prompt and efficient service with respect to justifiable actions in such areas as personal liability, partial release of security, insurance requirements or adjustments, loan division or transfers, conditional payments, extensions, deferments or reamortizations. Procedures shall provide for adequate inspections, reanalysis, reappraisal, controls on payment of insurance and taxes (and for payment when necessary), and prompt exercise of legal options to preserve the lender's collat-

eral position or guard against loss. The policy shall provide a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden."

The bank acknowledges that it has a policy of forbearance; however, it contends that forbearance is required only where three conditions are met: The borrower must be cooperative; the borrower must make an honest effort to meet the conditions of the loan contract; and the borrower must be capable of working out of the debt burden. The bank does not challenge the first two—cooperation and honest effort. It does, however, challenge the third. Included in the district court file is an affidavit of the president of the Federal Land Bank Association of Ottawa, which states in substance that he determined, from an analysis of the landowners' financial statements, that they were incapable of working out of the debt burden. Thus, the only evidence before the trial court is that the land bank did consider forbearance, but found one of the three essential elements—ability to work out of the debt burden—lacking.

The landowners rely upon *Matzke v. Block,* 564 F. Supp. 1157 (D. Kan. 1983), *aff'd in part and rev'd in part* 732 F.2d 799 (10th Cir. 1984), followed in *Shick v. Farmers Home Admin. of U.S. Dept. of Agric.,* 748 F.2d 35 (1st Cir. 1984). *Matzke,* however, dealt not with federal land bank statutes and regulations, but with an entirely separate and distinct set of statutes and regulations concerning the Farmers Home Administration and particularly with 7 U.S.C. § 1981a (1982). The thrust of *Matzke,* however, was that the Secretary of Agriculture must *exercise* the discretion granted to him by the act. Here, the lending agency, through its agents, has exercised its discretion by reviewing the borrowers' financial condition and making a determination on the issue of forbearance—albeit unfavorable to the borrowers.

The correspondence between the parties, to which the landowners refer in their brief (though not included in the record on appeal) indicated that the landowners were well aware of the policy of forbearance. They could have—and obviously did—present to the land bank their financial statements and statistics. The land bank simply reached a conclusion adverse to the landowners' position.

Under the circumstances, we know of no reason why the trial court should be required to hear evidence upon and redetermine

the issue of ability to work out of the debt burden. That matter is best left to those in whom the land bank places that responsibility. Upon oral argument, counsel stated that the initial determination is made by the president or an officer of the local land bank association, from the borrower's financial statements, and then is reviewed by the Board of The Federal Land Bank of Wichita before any action is taken to extend the loan or to foreclose. We find no statutory authority for court review of such a determination.

Included within the landowners' argument concerning the necessity of an administrative hearing is the statement that the failure of the land bank to grant an administrative hearing denied the Reads due process of law. *DeLaigle v. Federal Land Bank of Columbia,* 568 F. Supp. 1432 (S.D. Ga. 1983), is in point on that issue. It holds that the federal land banks are private corporations and not governmental agencies; that the admittedly heavy regulation of federal land banks does not transform them into governmental agencies; and that a cause of action for deprivation of due process will not lie against a federal land bank. We agree.

The judgment is affirmed.