**FEDERAL LAND BANK of SAINT PAUL, a body corporate, Plaintiff and Appellee,**

**v.**

**Donald G. HALVERSON and Lorna G. Halverson, husband and wife, Defendants and Appellants.**

**Civ. No. 11,123.**

Supreme Court of North Dakota.

July 31, 1986.

Traynor, Rutten & Traynor, Devils Lake, for plaintiff and appellee; argued by J. Thomas Traynor, Jr.

Kirschner & Baker, Fargo, for defendants and appellants; argued by Michael J. Garrison, Fargo.

Steven E. Noack, Asst. Atty. Gen., Office of Atty. Gen., Bismarck, for amicus curiae State of N.D.

MESCHKE, Justice.

The Federal Land Bank of Saint Paul sued to foreclose its mortgage on the farm of Donald G. and Lorna G. Halverson. Halversons admitted their default but pled affirmative defenses seeking either administrative forbearance under a Farm Credit Administration regulation, or judicial forbearance under the unique confiscatory-price defense statutes of North Dakota.

Upon the Bank's motion and after exchange of affidavits and briefs, the trial court ordered summary judgment foreclosing the mortgage. We reverse and remand for trial of the forbearance defenses, holding that Halverson's affidavit demonstrated material issues of fact. But, we do not decide all of the issues argued on appeal because we have neither adequately developed facts, nor the trial court's reasoning.

## I. MORTGAGE FORECLOSURE

The Bank sought foreclosure of its mortgage on Halversons' 1,280 acre farm for a balance due of over $532,000. Answering the Bank's complaint, Halversons admitted the note, mortgage and default, but asserted affirmative defenses:

First, Halversons claimed a right to "alternative loan servicing arrangements" with the Bank "under federal law."

Second, Halversons pled that, since "the amount of the debt is less than the value of the property sought to be foreclosed, foreclosure will have the effect of depriving" them of their home "and confiscating [their] property." This defense sought "appropriate relief" under § 28–29–05, N.D.C.C.

Third, Halversons pled that, since "the price of farm products produced in this state is not equal to the cost of production in comparison with the price of other commodities in general entering into the business of agriculture[,] [f]oreclosure ... will confiscate or tend to confiscate" their property. This defense sought "appropriate relief" under § 28–29–04, N.D.C.C.

Halversons' prayer for relief included a request for "appropriate relief under Section 28–29–04 and 28–29–05 of the North Dakota Century Code, including but not

limited to d[el]ay of the entry of judgment or the issuance of execution, the deferral of the signing of any order for judgment, deferring the signing of order for judgment except upon particular conditions, or the delaying of any signing of any order of foreclosure to such time as the Court shall deem it equitable and just [to] enter the same."

The Bank moved for summary judgment. A supporting affidavit by Mr. Bullinger, manager of its Devils Lake branch, outlined the circumstances of Halversons' default and negotiations with the Halversons about repayment, both from the Bank's viewpoint. It recited that Halversons' "repayment record has been good until March of 1984," and that from April 1984 until December 1984 Halversons had made payments of $5,000 each month on an annual mortgage payment of $58,261.55 past due since March 1984. The affidavit declared:

"... the loan of the Defendants with the Plaintiff was placed on non-accrual on or about January 10, 1985, and on that date, an amount of the loan was charged off, for the reason that the Plaintiff feels its collateral position was jeopardized, and those steps were necessary to guard against a loss, because of the increasing debt owed by the Defendants to t[h]e Plaintiff, and the value of the property."

Donald G. Halverson's "Affidavit in Opposition to the Motion For Summary Judgment" outlined borrowing from the Bank starting in 1979 when three owned quarters were mortgaged to buy another quarter of land and to build a home. (When the other four mortgaged quarters were purchased and mortgaged was not explained.) Poor crop years in 1980 (too wet at harvest), 1981 (hailed out), 1982 (early frost), 1983 (drought), and 1984 (drought) were described. Discussions with Bank representatives and payments to the Bank were set out from the Halversons' viewpoint, including:

"16. That Mr. Bullinger at no time informed me of my rights regarding an extension, reamortization or deferment of the loan in question as required by federal regulation, nor did he offer me any alternative loan servicing arrangement regarding the Federal Land Bank loan."

The affidavit also stated:

"20. That the land in question which is under foreclosure is approximately 1,280 acres. Of that 1,280 acres, 1,030 acres approximately is crop land. In addition, on the property is a home which was built in 1979, a quonset shed and shop, approximately 45,000 bushels of grain storage bins, as well as the crop land. That in the opinion of your affiant the value of the property in question well exceeds the total indebtedness to the Federal Land Bank and therefore the Federal Land Bank is not under-secured. That your affiant's home is on the property in question and that should the foreclosure proceeding go forward at this time it would have the effect of depriving your affiant of his home and confiscating his property."

The Bank argued that the confiscatory-price defense statutes, which include § 28–29–04 and § 28–29–05, N.D.C.C., were no longer in effect and were unconstitutional. The Bank recognized that the Farm Credit Administration regulations called for consideration of alternative loan servicing arrangements but claimed that Halversons did not qualify.

Without explaining its reasons, the trial court granted summary judgment foreclosing the mortgage. The order for judgment said only "that there are no issues of fact presented in this case."

Halversons appeal, arguing that material issues of fact needed to be decided to properly consider their forbearance defenses. The Bank responds that the confiscatory-price defense statutes no longer apply and, in any event, are unconstitutional. Alternatively, the Bank argues that the trial court exercised its discretion to not grant forbearance under the confiscatory-price defenses, which the Bank also claims have been preempted by federal law. The Bank urges that the affidavits demonstrated that there were no material issues of fact about

Halversons qualifying for forbearance under the federal regulation.

## II. JUDICIAL FORBEARANCE

■ The judicial power of forbearance in foreclosure proceedings, carried forward from the agricultural and economic crisis in the 1930's, is expressed in statutes which are collectively called the confiscatory-price defenses. *Production Credit Association of Minot v. Lund,* 389 N.W.2d 585 (N.D. 1986). The main sections are:

"*28-29-04. Power of courts when prices are confiscatory.*—Until the price of farm products produced in this state shall rise to a point to equal at least the cost of production, in comparison with the price of other commodities in general, entering into the business of agriculture, the supreme court of this state and all district and county courts in this state shall have power, when it is deemed for the best interests of litigants, to extend the time for serving and filing all papers requisite and necessary for the final determination of any cause. Any such court, in like manner, may stay the entry of judgment or the issuance of execution thereon, or may defer the signing of any order for judgment, or may defer terms of court, whenever in the judgment of the court the strictly legal procedure in any cause will confiscate or tend to confiscate the property of any litigant by forcing the sale of agricultural products upon a ruinous market.

"*28-29-05. Courts may delay orders in foreclosures.*—Whenever any foreclosure proceeding is pending in any court in this state and the amount of the debt is less than the value of the property involved, and when any order for judgment will have the force and effect of depriving a defendant of his home and confiscating his property, the court may construe further proceedings to be unconscionable, and may delay the signing of such order to such time as it shall deem it advisable and just to enter the same."

See also, § 28-29-06, N.D.C.C., which authorizes courts to take judicial notice of the situation of producers when prices of farm products are confiscatory. (And see, *Matter of Request For Advisory Opinion,* 387 N.W.2d 239 (S.D.1986), where the South Dakota Supreme Court recently took judicial notice that "agriculture in this state is undergoing serious financial problems because of deflating land prices, low commodity prices, and high operating expenses.")

In *Federal Land Bank of Saint Paul v. Thomas,* 386 N.W.2d 29 (N.D.1986), we held that it was improper for a trial court to grant summary judgment foreclosing a real estate mortgage where the mortgagor filed an affidavit setting out a confiscatory-price defense. Here, Halverson's affidavit declared that the amount of the debt was less than the value of their property being foreclosed, so that foreclosure would have the effect of depriving them of their home and confiscating their property. This is one of the confiscatory-price defenses. When considered with Bullinger's affidavit that the Bank charged off a portion of the Halverson loan for lack of security, Halverson's affidavit demonstrates evident issues of material fact about this forbearance defense. Therefore, summary judgment of foreclosure was improper, just as it was in *Federal Land Bank of Saint Paul v. Thomas, supra.*

■ Nevertheless, the Bank argues that confiscatory-price forbearance defenses do not apply because either the statutes are no longer in effect, they are unconstitutional, or they are preempted by federal law, and that the trial court exercised discretion in not granting any forbearance.

Our recent holding that the confiscatory-price defense statutes were not self-repealing and are still in effect, *Production Credit Association of Minot v. Lund, supra,* disposes of the Bank's first avoidance argument.

■ The record does not show that the rest of the Bank's arguments were considered by the trial court, nor does it show that the preemption argument was even

made. If the trial court relied on any of those legal theories, it did not say so. The trial court simply declared that "there are no issues of fact." It did not explain how it came to that conclusion amid the several theories submitted to it. While "[f]indings of fact and conclusions of law are unnecessary on decisions of motions" for summary judgment, Rule 52(a), N.D.R.Civ.P., a trial court certainly should explain why it deems summary judgment appropriate when several disputed legal theories are argued to it.

"When a trial court enters an order on any matter before it, responsible exercise of judicial power suggests a need for explanation of the court's reasons. Citizens involved in court matters should know and understand, to the greatest extent possible, the reasons for what is happening to them. The public, as well as the appellate courts, should have some way to evaluate actions of a trial court. Perhaps justice should be 'blind,' in the sense of impartiality, but surely it should not be administered in silence or secrecy, in the sense of being done without apparent reason." *Patten v. Green*, 369 N.W.2d 105, 108 n. 1 (N.D.1985) (Meschke, J., concurring).

■ It is well established that a legislative enactment is presumed to be constitutional. *State v. Klein*, 63 N.D. 514, 249 N.W. 118, 127 (1933); *Snyder's Drug Stores, Inc. v. North Dakota State Board of Pharmacy*, 219 N.W.2d 140, 153 (N.D. 1974). Therefore, a complete record of relevant facts and reasons by a trial court is normally necessary for appellate review of a constitutional issue. See *Murie v. Cavalier County*, 68 N.D. 242, 278 N.W. 243 (1938); *Asbury Hospital v. Cass County*, 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6 (1945). And, questions not fully developed and decided in the trial court are not usually addressed by this court. *Colgate-Palmolive Company v. Dorgan*, 225 N.W.2d 278, 282 (N.D.1974); *Farmers State Bank of Leeds v. Thompson*, 372 N.W.2d 862, 865 (N.D.1985). Therefore, we decline to address the issues of constitutionality of the confiscatory-price forbearance defense stat-

utes and of the preemption of those statutes by federal law, just as we declined to address some premature issues in the companion case of *Production Credit Association v. Halverson*, 386 N.W.2d 905 (N.D. 1986). The facts have not been adequately developed and we do not have the trial court's reasons.

■ Similarly, we decline to address the Bank's argument that the trial court exercised its discretion under § 28–29–05, N.D. C.C., by not granting any forbearance. The Bank pressed for favorable exercise of the trial court's discretion by urging that delay has a greater confiscatory effect than foreclosure since unpaid interest increases a debt that may not be realized from the land. But, the trial court did not deny forbearance to Halversons for any expressed reason. We are unwilling to recognize an exercise of discretion on summary judgment with a silent record. Exercise of discretion, where inferences must be made from the evidence, is inconsistent with the concept of summary judgment where no material issue of fact may exist.

■ The importance of the policy of judicial forbearance embodied in our confiscatory-price defense statutes is emphasized by the repetition of our recent decisions about forbearance. *Folmer v. State*, 346 N.W.2d 731 (N.D.1984); *Heidt v. State*, 372 N.W.2d 857 (N.D.1985); *Lang v. Bank of North Dakota*, 377 N.W.2d 575 (N.D.1985); *Federal Land Bank of Saint Paul v. Thomas, supra;* and *Production Credit Association of Minot v. Lund, supra.* Forbearance simply means some delay in enforcing the debt by the exercise of patience and restraint. It may depend upon appropriate conditions. See footnote 1, *Federal Land Bank of Saint Paul v. Thomas, supra,* 386 N.W.2d at 31. In exercising judicial discretion to deny or to grant forbearance under this important policy, a trial court should explain why it has chosen to do so.

### III. ADMINISTRATIVE FORBEARANCE

A Farm Credit Administration regulation, which applies to both federal land

banks and production credit associations, 12 C.F.R. § 614.4510(d), provides:

"In the development of the bank and association loan servicing policies and procedures, the following criteria shall be included:

"(1) *Term loans.* The objective shall be to provide borrowers with prompt and efficient service with respect to justifiable actions in such areas as personal liability, partial release of security, insurance requirements or adjustments, loan division or transfers, conditional payments, extensions, deferments or reamortizations. Procedures shall provide for adequate inspections, reanalysis, reappraisal, controls on payment of insurance and taxes (and for payment when necessary), and prompt exercise of legal options to preserve the lender's collateral position or guard against loss. *The policy shall provide a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden.* Loan servicing policies for rural home loans shall recognize the inherent differences between agricultural and rural home lending." (emphasis added.)

Halversons claim that this regulation compelled the Bank to provide a means of forbearance through "conditional payments, extensions, deferments or reamortizations" for loans in default, that the Bank did not do so, and that, at least, there were material issues of fact about Halversons qualifying for the forbearance contemplated by the regulation.

The Bank counters that Halversons were not "cooperative," were not "making an honest effort," were not "capable of working out the debt burden," and therefore were not qualified for forbearance beyond that given when Halversons were permitted to make monthly payments during 1984 on the past due annual installment.

Only a few reported decisions have considered the effect of this regulation telling federal land banks to develop a "policy" which "shall provide a means of forbear-

ance for cases when the borrower is cooperative" and otherwise qualified.

*DeLaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432 (S.D.Ga.1983) is the root decision. It declared that "the provisions of this regulation are substantive rules that federal land banks must follow when they service farm loans" and "affect individual obligations." *Id.* at 1437. The *DeLaigle* court, however, declined to issue a federal court injunction to halt nonjudicial foreclosure proceedings against the borrower's real property because the foreclosing federal land bank was not a governmental agency.

Since *DeLaigle,* one branch of federal decisions has unanimously concluded that borrowers do not have any private cause of action against federal land banks and production credit associations for either damages or injunctive relief in federal courts under the Farm Credit Act and regulations. *Bowling v. Block,* 785 F.2d 556, 557 (6th Cir.1986); *Smith v. Russellville Production Credit Ass'n.,* 777 F.2d 1544, 1548 (11th Cir.1985); *Aberdeen Production Credit Association v. Jarrett Ranches, Inc.,* 638 F.Supp. 534 (D.S.D.1986); *Spring Water Dairy, Inc. v. Federal Intermediate Credit Bank of St. Paul,* 625 F.Supp. 713, 719 (D.Minn.1986); *Apple v. Miami Valley Production Credit Ass'n.,* 614 F.Supp. 119, 122 (S.D.Ohio 1985); *Hartman v. Farmers Production Credit Ass'n. of Scottsburg,* 628 F.Supp. 218 (S.D.Ind.1983).

In so holding, one of the decisions took a decidedly different view of the administrative forbearance regulation than *DeLaigle. Smith v. Russellville Production Credit Ass'n.,* 777 F.2d at 1548 said:

"... the 'means of forbearance' regulation in the present case is not a substantive rule but, rather, is a general statement of agency policy. The regulation states that, when banks and associations develop their loan servicing policies and procedures, 'the policy shall provide a means of forbearance' for borrowers meeting certain criteria. 12 C.F.R. § 614.4510(d)(1) (emphasis added). Although the term 'shall' indicates the

mandatory nature of this policy, the regulation is nevertheless directed at agency policy, and is not a substantive rule. Accordingly, we hold that 12 C.F.R. § 614.-4510(d)(1) does not have the force and effect of law, and does not provide the basis for an implied private right of action on behalf of borrowers such as the Smiths." *Id.* at 1548.

And, Smith added a footnote:

"We disapprove of *DeLaigle v. Federal Land Bank of Columbia, supra,* to the extent that it may be inconsistent with this opinion."

But, we do not think that this strand of decisions bears directly on the different issue of whether a qualified borrower may resist a foreclosure upon the grounds that he did not receive the forbearance called for by the regulation. This different issue has only been addressed in three reported decisions by state courts.

The Appellate Division of the Supreme Court of New York affirmed a judgment of foreclosure in favor of a federal land bank, where it found that the bank "has complied with its statutory [sic] mandate by formulating a policy of alternatives to foreclosure" and had "forbore" for over three years prior to commencing foreclosure action. *Federal Land Bank of Springfield v. Saunders,* 108 A.D.2d 838, 485 N.Y.S.2d 342 (1985). That court said, "[T]his policy, as set forth in respondent's internal guidelines, does not have the force and effect of law but is designed to guide respondent's discretion in rendering individual decisions," and concluded the bank "acted within its governing regulations, and we will not substitute our judgment for that of [the bank]." *Id.* at 343–344.

In *Federal Land Bank of Wichita v. Read,* 237 Kan. 751, 703 P.2d 777 (1985), the Supreme Court of Kansas concluded: "A policy of forbearance is required by the regulation." *Id.* 703 P.2d at 779. But the Supreme Court of Kansas affirmed a judgment of foreclosure, holding that "the only evidence before the trial court is that the land bank did consider forbearance, but found one of the three essential elements—

ability to work out of the debt burden—lacking." *Id.* It also reasoned that there was "no statutory authority for court review of ... a determination" by a federal land bank that no further forbearance was appropriate. *Id.*

Very recently, the Supreme Court of Ohio divided on this issue. In *Farmers Production Credit Association of Ashland v. Johnson,* 24 Ohio St.3d 69, 493 N.E.2d 946 (1986), four members of the court concurred in holding that a trial court did not abuse its discretion, after summary judgment, in denying leave to a borrower to amend his answer to a foreclosure suit by a production credit association to raise the administrative forbearance regulation as a defense. The same decision also held the trial court did not abuse its discretion in refusing to reopen a summary judgment of foreclosure in favor of a federal land bank against the same borrower on a real estate mortgage to permit the same defense. The *Johnson* majority expressly agreed with the *Russellville* view of the regulation, and held that the regulation "does not provide a valid defense to a foreclosure action." 493 N.E.2d at 950. The *Johnson* majority reinforced their decision by also adopting the view of the Kansas Supreme Court that "the lender is the one best able to make the determination as to whether the conditions have been met, especially with regard to the borrowers' ability to pay the debt," as well as by holding that "PCA did provide a means of forbearance." *Id.* at 950.

Three justices of the Supreme Court of Ohio dissented. Justice Brown, with another justice concurring, declared that a "breach of the federal regulation requirement" for administrative forbearance "rises to an actionable, potentially meritorious defense to a foreclosure action, and necessarily presents an issue of fact which must be determined by the trial court." *Id.* at 951–952. In his dissent, Justice Douglas adopted the *DeLaigle* view that " 'these regulations ... were issued by the appropriate agency pursuant to statutory authority' and therefore should have the 'force

and effect of law,' " and went on to assert that where there was a failure to comply with the administrative forbearance regulation "a valid defense to the bank's foreclosure action may exist." *Id.* at 953–954. Justice Douglas also recognized:

"If it can be shown that the criteria outlined in Section 614.4510(d) were not met by the appellants [borrowers], foreclosure is warranted and should be upheld." *Id.* at 954.

The diverse views expressed in these few cases suggest that, to decide this issue of federal law as to the effect of the administrative forbearance regulation in foreclosure, a better exposition of the facts is needed about the development of a forbearance policy by the Bank, as well as about Halversons' qualifying for forbearance and about the Bank's actions in extending forbearance to Halversons. Further factual development should aid the legal analysis of this closely balanced issue.

■ Generally, interpretation of a regulation to ascertain its purpose is a question of law, but the determination of whether conduct complies with a regulation is a question of fact. *Smith v. State*, 389 N.W.2d 808 (N.D.1986). The limited affidavit record in this case to date simply does not develop the facts sufficiently either to consider compliance with this regulation or to interpret the application of it. On this limited record, we cannot assess the potential seriousness of the Bank's deviation, nor are we in a position to prescribe a remedy for any dereliction.

■ Halversons emphasize that the Bank has not shown that it did have a written policy to implement forbearance procedures. Halverson's affidavit stated that the Bank did not notify them of a forbearance policy, and denied that Halversons received the forbearance contemplated by the regulation. The Bank did not directly respond to those claims.

Rather, the Bank seeks to avoid the potential effect of the regulation by claiming that Halversons did not qualify for administrative forbearance. The Bank points to evidence that Halversons sued it and that, when requested to do so, Halversons did not sell beans on hand to make mortgage payments, as showing that Halversons were not cooperative and not making an honest effort. On the other hand, Halverson's affidavit outlined efforts to work with the Bank which arguably disputed the Bank's claims about "cooperativeness" and "honest effort." Thus, there were evident issues of material fact on the first two criteria for administrative forbearance by the Bank.

The Bank points to Bullinger's assertion that Halversons were borrowing from the production credit association to make payments to the Bank, as showing that Halversons were not capable of working out the debt burden. Halverson's affidavit denies this and swears that the value of the land exceeded the debt. Thus, there were issues of material fact on the third criterion for administrative forbearance by the Bank, as well.

Thus, we conclude that there were material issues of fact about Halversons' qualifying for administrative forbearance. Only if it is factually determined that Halversons were qualified for, but did not receive, forbearance does it become necessary to further consider the effect of the regulation.

■ We also believe that full development of the facts about the Bank's policy and its application to Halversons will help divine the essential effect of the regulation: was it intended to extend a procedural benefit to the class of borrowers which includes Halversons, or was it only intended to be a "mere aid" to guide the exercise of discretion by the Bank?

In *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 538–539, 90 S.Ct. 1288, 1292–93, 25 L.Ed.2d 547, 552–53 (1970), the United States Supreme Court undertook to analyze when a federal agency is required to strictly comply with its own rules. That decision concluded that certain rules of the Interstate Commerce Commission were "mere aids to the exercise of the agency's independent discretion," rather than "intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfet-

tered discretion...." 397 U.S. at 538–539, 90 S.Ct. at 1292. Unfortunately, neither that opinion nor later opinions of the United States Supreme Court have set out any sure framework to determine what federal regulations confer procedural benefits, rather than serve as "mere aids". Compare *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1070, 39 L.Ed.2d 270, 294 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures .... even where the internal procedures are possibly more rigorous than otherwise would be required.") with *United States v. Caceres,* 440 U.S. 741, 754, 99 S.Ct. 1465, 1472, 59 L.Ed.2d 733, 745 n. 18 (1979) ("... agencies are not required, at the risk of invalidation of their action, to follow all of their rules, even those properly classified as 'internal.' ").

Also, interpretation of this regulation may be affected by further Congressional action. On December 23, 1985, Congress amended the Farm Credit Act of 1971, effective thirty days after enactment; Farm Credit Amendments Act of 1985, Pub.L. No. 99–205, § 401, 99 Stat. 1678 (1985). Section 301(b) of the Amendments inserts a new § 4.13(b) into the Farm Credit Act:

> "In accordance with regulations of the Farm Credit Administration, System institutions shall develop a policy governing forbearance. Each System institution shall provide borrowers with a copy of the institution's policy regarding forbearance at such time or times as the Farm Credit Administration shall prescribe in such regulations."

One fragment of legislative history of this Farm Credit Amendments Act of 1985 suggests that "the rights of applicants and member-borrowers as set forth in this Act and in the regulations of the Farm Credit Administration shall be enforceable in courts of law." 131 Cong.Rec. H11519 (daily ed. Dec. 10, 1985). While this federal statutory amendment cannot apply to this case, which arose before its enactment, the close correspondence of the amendment's language with that of the regulation suggests a bearing on interpretation of the regulation.

The Bank also points to the language of the regulation that calls for procedures for "prompt exercise of legal options to preserve the lender's collateral position or guard against loss," and argues that it complied with the regulation when it "charged off" part of the loan and commenced foreclosure to "preserve its collateral position and guard against loss." But, like the issues about Halversons' qualifying for forbearance, this argument can best be considered upon full development of the facts and the inferences to be drawn from them.

Finally, the Bank suggests that this regulation is not "a binding contract" giving the borrower any rights since it was not included in the mortgage. The Bank cites *Manufacturers Hanover Mortgage Corporation v. Snell,* 142 Mich.App. 548, 370 N.W.2d 401 (1985), which, in a proceeding after foreclosure by advertisement, rejected a "mortgage servicing defense" based upon both HUD regulations and a handbook because they "must somehow be implicit terms of a mortgage contract between plaintiff and defendants." 370 N.W.2d at 404. But, here, it is clear that this Farm Credit Administration regulation applies to the Bank. The essential issue remains: does the regulation accord enforceable procedural rights to borrowers like Halversons, or is the regulation a "mere aid" to guide discretionary actions of the Bank.

When the affidavits are viewed in the light most favorable to the Halversons, as they must be at this stage, there are material issues of fact about the application of the administrative forbearance policy to the Halversons and about the Bank's compliance with the regulation. Like the undecided issues on judicial forbearance, a decision on the full reach of this federal forbearance regulation should await development of an adequate record in the trial court.

## IV. SUMMARY

We reverse the summary judgment ordering foreclosure of the Bank's mortgage against the Halversons' farm and we direct

vacation of any sale pursuant to the judgment. We remand for trial of the confiscatory-price defense to determine whether Halversons are entitled to judicial forbearance in the course of the foreclosure proceedings. We also remand for resolution of factual issues and development of an adequate record on Halversons' claim that they were improperly denied administrative forbearance by the Bank.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.