**REDWOOD VILLAGE PARTNERSHIP,
LTD., Petitioner and Appellee,**

v.

**NORTH DAKOTA DEPARTMENT OF
HUMAN SERVICES, Respondent
and Appellant.**

Civ. No. 870136.

Supreme Court of North Dakota.

Feb. 25, 1988.

Lundberg, Nodland, Lucas, Schulz & Lervick, Bismarck, for petitioner and appellee, argued by Irvin B. Nodland.

Blaine L. Nordwall (argued), Human Services Dept., Bismarck, for respondent and appellant.

ERICKSTAD, Chief Justice.

The North Dakota Department of Human Services [Department] appeals from a district court judgment reversing the Department's determination of reimbursement rates for residents eligible for state or county supplementation of supplemental security income benefits at Redwood Village Partnership, Ltd. [Redwood]. We reverse the judgment of the district court and remand to the Department.

Redwood Village, Inc., [Corporation] was a basic-care facility in Wilton for the aged and infirm, licensed by the Department under N.D.C.C. § 50–18–03, and N.D.A.C. Chapter 75–02–08.

In 1984, after obtaining an appraisal and negotiating a purchase price, the Corporation sold the facility to Gregory Cleveland, the Corporation's accountant, and Elliott Simon for $722,000. The purchasers formed a partnership, Redwood, with themselves as general partners and thirteen other investors as limited partners.

Based on the purchase price of the facility, Redwood applied to the Department for a reimbursement rate for July 1, 1985, through June 30, 1986, for its forty-six residents eligible for supplemental security income benefits.[1] In its application Redwood estimated that its allowable costs of service for that year, including depreciation and interest based on the purchase price of the facility, would be $383,649 and requested a reimbursement rate of $687 per month per eligible resident. The Department audited the facility and determined that its allowable costs of service for that year would be $316,968 which translated into a reimbursement rate of $607 per month per eligible resident.

Redwood requested an administrative hearing before an independent hearing officer pursuant to N.D.C.C. §§ 50–06–05.1(21) and 54–12–01(18). The hearing officer determined that the reimbursement rate should reflect depreciation and interest costs based upon the actual purchase price of the facility and recommended that the reimbursement rate be set at $687 per month per eligible resident. The Executive Director of the Department did not adopt the hearing officer's recommendations and instead determined that the reimbursement rate should reflect depreciation and interest based on what a prudent and cost-conscious buyer would have paid for the facility. The Executive Director thus set the reimbursement rate at $607 per month per eligible resident.

Redwood appealed to the district court, contending that the hearing officer's recommendations were binding on the Department and that the Department erred in determining the depreciation and interest costs for purposes of ratesetting. The district court concluded that the hearing officer's recommendations were not binding on the Department. The district court also concluded that Redwood had paid a reasonable price for the facility and therefore the Department's reimbursement rate based on what a prudent and cost-conscious buyer would have paid for the facility was not supported by a preponderance of the evidence. The district court thus remanded to the Department for entry of judgment con-

---

1. Pursuant to N.D.C.C. §§ 50–18–06 and 50–18–06.1, the Department is authorized to establish reasonable rates for basic-care facilities for the care and maintenance of residents eligible for county or state supplementation of supplemental security income benefits and to promulgate rules and regulations necessary for that ratesetting. The Department's methodology for ratesetting is promulgated in N.D.A.C. Chapters 75–02–07 and 75–02–08, and is based upon the provider's "allowable costs" of service [N.D.A.C. § 75–02–08–16(1)] which is defined to mean "the facility's *actual costs,* adjusted according to regulations, which are reimbursable under the general assistance program." [Emphasis added.] N.D.A.C. § 75–02–07–01(1). The Department audits the facility according to its regulations for determining allowable costs attributable to patient care and then sets an "audit rate" for purposes of reimbursement. N.D.A.C. § 75–02–08–16(2). After the audit rates for all the basic-care facilities for the aged and infirm within the State are determined, a ceiling rate representing the seventieth percentile of the audit rates is established and a facility is entitled to reimbursement for its eligible residents at either its audit rate or the ceiling rate, whichever is lower. N.D.A.C. § 75–02–08–16(3).

sistent with its opinion and also awarded Redwood approximately $5,000 for attorneys fees and costs. The Department has appealed.

Our review is governed by N.D.C.C. § 28–32–19, which provides:

"*28–32–19. Scope of and procedure on appeal from determination of administrative agency.* The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact.

"If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

■ Our review of an administrative agency decision thus involves a three-step process of determining whether or not the findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision is supported by the conclusions of law. *Montana–Dakota Utilities Co. v. Public Service Comm'n*, 413 N.W.2d 308 (N.D.1987). In assessing whether the agency's findings of fact are supported by a preponderance of evidence, we determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979). We review the decision of the agency and look to the record compiled before the agency. *Montana Dakota Utilities Co. v. Public Service Comm'n, supra.*

The basic issue raised in this case involves the Department's determination of allowable costs of depreciation and interest for purposes of ratesetting. However, a threshold issue involves the Executive Director's decision not to adopt the hearing officer's recommendations.

Redwood contends that the provisions authorizing the appointment of an independent hearing officer [N.D.C.C. §§ 50–06–05.1(21) and 54–12–01(18) [2]] were intended

2. N.D.C.C. § 50–06–05.1(21), provided:
"The department shall have the following powers and duties to be administered by the department through its state office or through regional human service centers or otherwise as directed by it:
    \*    \*    \*
"21. To provide an administrative appeal and hearing process for all claimants who are aggrieved by a decision of the department. Provided, however, that upon request of any claimant, the department shall refer the claimant's appeal or request for administrative hearing to the attorney general for the appointment of a hearing officer who is not

an employee of the department and who has not been involved in the decision from which the claimant has appealed."
That subsection was enacted by 1985 N.D.Sess. Laws Ch. 522, § 1, and was repealed by 1987 N.D.Sess.Laws Ch. 582, § 30. The current provision is found at N.D.C.C. § 50–24.4–18(2), and provides:
"2. Upon the request of the nursing home, the department shall refer the appeal to the attorney general for the appointment of a hearing officer, knowledgeable in ratesetting matters, who is not an employee of the department and who has not been involved in

to "inject [the] objectivity and fairness of an independent judge into administrative hearings" involving the Department by permitting an aggrieved claimant's case to be heard before a person not involved in the original decision. While Redwood does not specifically argue that the hearing officer's recommendations were binding on the Department (see fn. 2), it does contend that the Department may not ignore the findings of an independent hearing officer in a patently arbitrary and unreasonable manner.

An administrative officer deciding a case upon recommendations by a hearing officer need not actually hear the witnesses testify or hear oral argument, but the decisionmaker must consider and appraise the evidence before rendering a decision. *Schultz v. North Dakota Department of Human Services*, 372 N.W.2d 888 (N.D. 1985). The decisionmaker may reject the hearing officer's recommendations even on questions involving the credibility of contradictory witnesses. *Id.* In *Schultz, supra,* the Executive Director did not adopt a hearing officer's recommendations, and we declined to probe the Executive Director's mental process in rendering his decision but limited our inquiry to a review of the findings, conclusions, and decision under the appropriate standard of review with the warning that the Executive Director's decision should sufficiently explain his rationale for not following the hearing officer's

recommendations. *Compare Hammond v. North Dakota State Personnel Board*, 345 N.W.2d 359 (N.D.1984) [failure of Personnel Board members to review the record violated an employee's right to an informed decision by the Board].

In this case the Executive Director's decision stated that he "considered the entire matter, including testimony of witnesses, evidence, and exhibits received, arguments of counsel, briefs and responses filed." The arguments of counsel and briefs included several references to the hearing officer's recommendations. The Executive Director's statements establish that he considered the "entire matter," and we decline to probe his mental process in arriving at his decision. Rather we limit our inquiry to a review of his decision under the previously enumerated standard of review with the requirement that the Executive Director's decision sufficiently explain his rationale for not following the hearing officer's recommendations.

Within that framework, we review the Executive Director's determinations of allowable costs of depreciation and interest for purposes of ratesetting. Ratesetting is dependent on a determination of "allowable costs" which in turn is defined as "the facility's *actual costs,* adjusted according to regulations, which are reimbursable under the general assistance program." [Emphasis added.] N.D.A.C. § 75–02–07–01(1). N.D.A.C. Ch. 75–02–07 describes how al-

---

the decision from which the nursing home has appealed."
N.D.C.C. § 54–12–01(18), provided:
"The attorney general shall:

\* \* \*

"18. ... appoint, upon request, hearing officers to conduct hearings pursuant to chapter 28–32 in those instances where a claimant requests that the hearing be conducted by an individual who is not employed by the agency which made the decision from which the claimant has appealed pursuant to section 50–06–05.1."
That provision was also amended in 1987 to delete the reference to N.D.C.C. § 50–06–05.1 and incorporate a reference to N.D.C.C. § 50–24.4–18(2).
Neither provision in effect during this case specifically enunciated the hearing officer's responsibilities, nor did they specifically state the effect of the hearing officer's recommendations.

The absence of specific language granting the hearing officer the authority to render a final decision evidences an intent that the hearing officer's recommendations were not binding on the Department. Moreover, one of the chief proponents of the legislation, Allen Engen, the Executive Director of the North Dakota Health Care Association, testified that the legislation was intended to avoid the appearance of impropriety by having a disinterested person hear the case; however, he recognized that, under those provisions, the hearing officer's recommendations would not be binding on the decisionmaker. March 3, 1985 Minutes of Judiciary Committee of House regarding Senate Bill 2444, tape 60, side 2. John Graham, the Executive Director of the Department, also testified that the purpose of the legislation was to have a disinterested person preside over the hearing, but that the ultimate decision would be made by someone else. *Id.*

lowable costs, including depreciation [N.D. A.C. § 75–02–07–04 [3]], and interest [N.D. A.C. § 75–02–07–05 [4]], are treated for purposes of determining the audited rate.

N.D.A.C. 75–02–07–01(5), provides in relevant part as follows:

"*As used in this chapter:*

\*      \*      \*

"5. 'Reasonable cost' means a necessary and proper cost incurred in rendering the services subject to the principles established for revenue and costs. Reasonable cost includes both direct and indirect costs of providers of services. *The actual cost shall be related to resident care and shall not exceed what a prudent and cost-conscious buyer pays for a given item or services.* Resident care costs are those costs incurred for common and expected occurrences in the field of the provider's activity." [Emphasis added.]

The Department asserts that Redwood's depreciation and interest costs should be based on the price that a prudent and cost-conscious buyer would have paid for the facility. Redwood responds that its depreciation and interest costs should be based on the price it actually paid for the facility. Redwood alternatively argues that because this was an arms-length transaction, it paid what a prudent and cost-conscious buyer would have paid for the facility.

The interpretation of administrative regulations is a question of law. *Federal Land Bank of St. Paul v. Halverson,* 392 N.W.2d 77 (N.D.1986); *Stensrud v. Mayville State College,* 368 N.W.2d 519 (N.D. 1985). Administrative agency decisions on questions of law are fully reviewable by a court. *Appeal of Dickinson Nursing Center,* 353 N.W.2d 754 (N.D.1984).

N.D.A.C. 75–02–07–01(5) clearly defines "actual cost," as used in N.D.A.C. Ch. 75–02–07, to be what a prudent and cost-conscious buyer pays for a given item or service. That definition is in accord with the Department's construction. *See Clapp v. Cass County,* 236 N.W.2d 850 (N.D.1975) [administrative agency interpretation of statute is entitled to some weight when the agency interpretation does not contradict the clear and unambiguous statutory language]. We therefore construe "actual cost" as used in the Department's regulations for ratesetting to mean what a prudent and cost-conscious buyer pays for an item or service.

While the interpretation of the Department's regulations is a question of law, the determination of "actual costs" as defined in that regulation is a question of fact. *See Federal Land Bank of St. Paul v. Halverson, supra; Stensrud v. Mayville State College, supra.*

In this case the Department made the following findings regarding "actual costs" and depreciation:

"XVI.

"According to Mr. Norman Steinle, his appraisal, submitted to the Department, arrived at market value by the use of the cost approach and the income approach. The calculations used in the income approach were based upon information income estimates submitted to Mr. Steinle by Mr. Cleveland. Both the appellant [Redwood] and the Department agree that the income estimates furnished to Mr. Steinle by Mr. Cleveland were flawed, albeit the parties suggest differ-

---

**3.** N.D.A.C. § 75–02–07–04(1), provides, in part: "1. The principles of reimbursement for provider costs require that payment for services should include depreciation on all depreciable type assets that are used to provide covered service to general assistance recipients. *Costs acceptable for depreciation purposes shall be based on actual cost of the fixed assets ...*" [Emphasis added.]

**4.** N.D.A.C. 75–02–07–05(1) provides:

"1. To be allowable, interest must be supported by evidence of an agreement that funds were borrowed and that payment of interest and repayment of the funds are required, identifiable in the provider's accounting records, related to the reporting period in which the costs are incurred, necessary and proper for the operation, maintenance, or acquisition of the provider's facilities and used therein."

ent reasons for the flaws. Mr. Steinle testified that had he been asked to furnish an appraisal exclusively based on the cost approach, the resulting appraisal would have reached the same value as that part of his appraisal which reflected the cost approach ($530,800.00).

"XVII.

"The evidence of value of the purchased facility ranges from the assessed value of $183,100.00 for the real property and improvements (DHS Exhibit C) to $707,979.00 for the real property, improvements, and equipment (Testimony of D. Jiran). However, Mr. Jiran's valuation failed to adjust for significant factors concerning the actual facility in his use of estimating guides and also used estimates of the value of certain improvements, rather than actual costs, in that part of his estimate of actual reconstruction costs which purports to be based on cost. The 'actual cost,' as that term is used in N.D.A.C. § 75–02–04–07, [sic] [75–02–07–04] of the land and improvements is $530,800.00, an amount which Mr. Steinle and architect Robert Ritterbush agreed to be a reasonable estimate of the replacement cost of the facility.

\*     \*     \*

"XIX.

"For depreciation costs to be utilized, records establishing same must be adequate. Redwood Village's records regarding costs assigned to equipment items (Redwood Village Exhibit 3, Schedule B) were both inaccurate and inadequate. The claim for depreciation on the pickup reflects an allocation of 100% of the depreciation to the facility, while Redwood Village Exhibit 17 reflects personal use as well as facility related use. Thus, under authority of N.D.A.C.

§ 75–02–07–04, the depreciation costs as indicated by Redwood Village for items of equipment, aside from van depreciation costs, must be disallowed. Van depreciation costs may be allowed on the basis of 100% facility use, with the van cost basis to be established by NADA Retail Pricing Guide in effect at the time of sale. Pickup depreciation costs may be allowed on the basis of a mileage-based allocation between facility use and personal use, with the pickup cost basis to be established by NADA Retail Pricing Guide in effect at the time of sale. Equipment depreciation excluding vehicle depreciation may be allowed based on the establishment of an appropriate cost basis for such equipment, which may not exceed an amount arrived at by that allocation between such equipment costs and other purchase costs for all items purchased in the acquisition of the facility and such equipment by Redwood Village Partnership, Ltd., which is the same proportionate allocation used by Redwood Village Partnership, Ltd. when allocating the $722,000.00 purchase price between such equipment costs and all other purchase costs."

Before purchasing the facility, Cleveland retained Norman Steinle to appraise it. Steinle appraised the facility at $530,800 using a cost approach and at $880,000 using an income approach; however, he was unable to use a comparable sales approach because no basic-care facilities had ever been bought and sold in North Dakota. Steinle then blended the cost and income approaches and appraised the facility at $696,000,[5] not including two vehicles worth approximately $30,000. Redwood purchased the facility, including the vehicles, for $722,000. While the Department conceded that that was an arms-length transaction, there was evidence that Steinle's income approach was flawed because it re-

---

5. Steinle's appraisal described the blending:
  "Giving these wide margins of value, the appraiser has given the cost approach to value the highest consideration to value and added a percentage of the income approach to arrive at the final estimated value of: $696,000.00"
At the hearing Steinle described the blending:

  "Basically, [I] took about fifty percent of the increased value or the spread between the market approach and the income approach and applied that back and utilized that as coming up with what I thought would be a fair estimated value for that property ... [of] 696,000"

lied upon statements which overstated net operating income. Steinle further testified that if he had been asked to appraise the facility solely on the cost approach, he would have appraised it at $530,800. Under these circumstances we believe that, for purposes of ratesetting, the Department was entitled to rely upon Steinle's cost approach appraisal of $530,800, which, according to testimony of architect Robert Ritterbush, was a reasonable estimate of the replacement cost of the facility.

After reviewing the record, we conclude that a reasoning mind reasonably could have determined that the actual cost of the facility, as defined in the Department's regulations, was $530,800. The Department's treatment of depreciation of the facility, equipment and vehicles based on that "actual cost" was appropriate under these circumstances. Furthermore, we also believe that the Executive Director sufficiently explained his rationale for not following the hearing officer's recommendations because the hearing officer did not apply the definition of "actual cost" as used in the Department's regulations and instead based his decision on the price that Redwood actually paid for the facility.

■ We next turn to interest costs. In this case, Redwood raised a total of $300,-000 from its investors and used $220,000 of that investment as a downpayment for the facility. Redwood then financed the remaining $502,000 of the purchase price via a loan agreement with its predecessor, the Corporation.

The Department made the following finding about interest costs:

"XX.

"Interest costs are allowable only to the extent those costs represent borrowing which was necessary and proper for the acquisition of the facility, which is the difference between the investors' $300,000.00 contribution and the 'actual cost' (as that term is heretofore used and explained by these Findings) of the property purchased."

Under the Department's regulations, interest costs are allowable for ratesetting purposes when there is documentation of a loan agreement securing funds "necessary and proper for the operation, maintenance, or acquisition of the provider's facilities." N.D.A.C. § 75–02–07–05(1). See fn. 4. Allowable interest costs are thus dependent on "actual costs" only to the extent that that term is used in the definition of "allowable costs." N.D.A.C. § 75–02–07–01(1). The Department's regulations about interest do not otherwise limit the amount of a loan agreement. We believe the Department's regulations thus contemplate that "actual costs," as defined therein, are the upper limit for the amount of a loan agreement and that any such loan agreement for less than the "actual cost" is "necessary and proper for the ... acquisition of the provider's facilities."

Accordingly, we believe the Department misapplied its regulations about allowable interest costs because the loan agreement was for $502,000 which was less than the "actual cost" of the facility as defined in the Department's regulations ($530,800). We therefore remand to the Department for entry of an order allowing interest costs based on Redwood's loan agreement with the Corporation.

■ The Department next contends that the district court erred in awarding Redwood attorney's fees and costs under N.D. C.C. § 28–32–21.1, which provides, in part:

"*28–32–21.1. Actions against administrative agencies—Attorneys' fees and costs.*

"1. In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or agent of an administrative agency, the court must award the party not an administrative agency reasonable attorneys' fees and costs if the court finds in favor of that party and determines that the administrative agency acted without substantial justification."

The district court's award of attorneys fees was based on its determination that the Department's decision that actual costs

meant what a prudent and cost-conscious buyer would have paid for the facility was not substantially justified. Because we have sustained that part of the Department's decision, we can not say that the Department did not act with "substantial justification" in making that decision. Accordingly, we reverse the award of attorney's fees and costs under N.D.C.C. § 28–32–21.1.

We reverse the district court judgment and remand to the Department for entry of an order consistent with this opinion.

GIERKE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, concurring in part and dissenting in part.

I agree that the Department's finding that the actual cost of the facility, as defined in the Department's regulations, was $530,800 and must be sustained under our standard of review. Because I agree with that finding, however, I must dissent from that portion of the opinion which reverses the conclusion of the Department that interest costs are allowable "only to the extent those costs represent borrowing which was necessary and proper for the acquisition of the facility, ..." It is inconsistent to hold on the one hand that the Department's finding as to actual cost, as defined in the Department's regulations, must be sustained and, on the other hand, to ignore that finding in determining the allowable cost for interest.

Although the amount borrowed by Redwood may be less than the actual cost, as determined by Department regulations, it perverts the purpose of the regulations to construe them as only defining the upper limit for the amount of a loan agreement, thus justifying a conclusion that any such loan agreement for less than the actual cost as defined by the regulations is *necessary* for the acquisition of the facilities. [Sec. 75–02–07–05(1), N.D.A.C.] If funds from a source other than a loan are available to purchase the facility at a rate higher than actual costs, as determined by the Department, it follows that those funds are also available to purchase at a lower rate, i.e., at the actual cost as determined by the Department. It is disingenuous to conclude that the same amount loaned to purchase the facility at the higher rate is *necessary* to purchase the facility at the lower rate determined by the Department and to construe the regulations in a manner which permits such a result.

I assume it is not disputed that the reason for the entire Federal and State statutory and regulatory scheme herein involved is to prevent the expenditure of more tax dollars than are *necessary* for the purpose. The majority opinion sustains that objective insofar as it sustains the Department's finding concerning the regulatory definition of actual cost. It contradicts that objective in holding that the Department was in error in concluding that interest costs are allowable only to the extent those costs represent borrowing which was necessary and proper for the acquisition of the facility, and that such amount was the difference between the $300,000 contribution from the investors and the "actual cost" as determined by the Department.

LEVINE, J., concurs.