**AMERICANA HEALTHCARE CENTERS—MINOT AND FARGO, Appellees,**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellant.**

**Civ. No. 930125.**

Supreme Court of North Dakota.

Jan. 5, 1994.

Carol Ronning Kapsner (argued), Kapsner and Kapsner, Bismarck, for appellees.

William L. Strate (argued), Asst. Atty. Gen., Bismarck, for appellant.

NEUMANN, Justice.

The North Dakota Department of Human Services (Department) appeals from the district court judgment remanding this case back to the Department to recalculate the rates for reimbursement for Americana Healthcare Centers (AHC) in accordance with the district court's instructions. We reverse the judgment of the district court.

The material facts are not in dispute. AHC operates two nursing homes in North Dakota. Both homes provide services to Medicaid eligible residents, and receive final rate determinations from the Department. In 1991, AHC was issued final rate determinations by the Department for the 1991 rate year. The calculation of these final rate determinations included an offset for therapy income received from Medicare Part A and insurance.

Because NDAC § 75–02–06–12 specifically allowed an offset for therapy income received from Medicare Part B, but made no reference to income received from Medicare Part A or insurance, AHC requested a reconsideration of the final rates for its two facilities. This request was denied, and AHC filed an administrative appeal. Upon administrative appeal, the hearing officer affirmed the method of rate calculation established by the Department.

AHC then appealed to the district court. The district court reversed the Department's decision, finding for AHC. It held that the Department had violated its own regulations by improperly requiring an offset for Medicare Part A and insurance. The district court reversed, and remanded the case back to the Department for redetermination of AHC's final rate for the 1991 rate year. This appeal followed.

The Department is the state agency which administers the Medicaid program whereby long-term-care providers, such as AHC, are reimbursed for services furnished to eligible residents in providers' facilities. The Department is responsible for setting rates for reimbursement of these facilities. The state law governing the rate setting mechanism for reimbursement of nursing homes is found at NDCC ch. 50–24.4 (1989). Included in this chapter is a statute which requires the Department to establish rules for determining rates for nursing home care. NDCC § 50–24.4–02. See NDAC ch. 75–02–06. In addition to the statutes and the North Dakota Administrative Code, the Department publishes a "Rate Setting Manual for Nursing Facilities" for use by long term care facilities. Included in this manual is what is essentially a restatement of the North Dakota Administrative Code governing the establishment of rates.

The Department does not reimburse providers dollar for dollar. Allowable costs are identified, and are then considered in establishing the particular reimbursement rate for individual providers. As a matter of procedure, the providers report their actual costs to the Department. The Department then adjusts these actual costs according to allowable costs, and upon that basis, establishes the reimbursement rate. When determining

allowable costs, the Department offsets from those costs income received by the provider from other sources. NDAC § 75–02–06–12(1).

■ Our analysis focuses on interpretation of our state administrative regulations. Interpretations of administrative regulations are questions of law. *E.g., Redwood Village Partnership v. North Dakota Dep't of Human Servs.*, 420 N.W.2d 333, 337 (N.D.1988). Administrative agency decisions on questions of law are fully reviewable by this court. *Berger v. State Personnel Bd.*, 502 N.W.2d 539, 541 (N.D.1993); *Redwood Village*, 420 N.W.2d at 337; *cf.* NDCC § 28–32–19.

The particular regulation of the North Dakota Administrative Code at issue in this case states:

> "Several items of income, whether in cash or in any other form, will be considered as offsets against various costs as recorded in the books of the facility. Any income which is received by the facility, with the exception of the established rate, income from payments made under the Job Training Partnership Act, and income from charges to private pay residents for private rooms or special services, will be offset up to the total of the appropriate actual cost. If actual costs are not identifiable, income will be offset up to the total of costs described in this section.... These sources of income *include, but are not limited to:*
>
> .   .   .   .   .
>
> j. 'Therapy income'. Income from medicare part B and outpatient services will be offset to therapy costs. If therapy income is not identified by source, all therapy income will be offset.
>
> .   .   .   .   .
>
> m. 'Other cost-related income'. Miscellaneous income including amounts generated through the sale of a previously expensed or depreciated item...."

NDAC § 75–02–06–12(1) (1990) (emphasis added).[1] The determinative issue in this case is whether this regulatory language lim-

ited the Department to offsetting Medicare Part B, and restricted it from offsetting any other types of income, specifically Medicare Part A and insurance.

■ When an administrative agency's interpretation of a regulation does not contradict the clear and unambiguous language of the regulation, its interpretation is entitled to some weight. *Redwood Village*, 420 N.W.2d at 337. *See also Dickinson Nursing Center v. North Dakota Dep't of Human Servs.*, 353 N.W.2d 754, 758 (N.D.1984) ("In the complex Medicare reimbursement field, however, Federal courts have recognized that the administrative agency has been granted broad discretion to develop the 'reasonable costs' concept, and that its decisions in this area should be upheld if reasonably consistent with the statute."). We disagree with AHC's argument that the Department's position on the offset of therapy income from Medicare Part A and insurance is not reasonable and is inconsistent with applicable law and regulations, and therefore warrants no deference.

■ The construction of § 75–02–06–12(1) advocated by AHC is flawed. The list of types of incomes which the Department will offset is prefaced by the words "include, but are not limited to." The words "include, but are not limited to" are to be construed in their ordinary sense. As we have held before, this type of statutory drafting "ordinarily indicates an 'incomplete list.'" *Livingood v. Meece*, 477 N.W.2d 183, 194 (N.D.1991) (construing regulation from NDAC) (citing to *Lucke v. Lucke*, 300 N.W.2d 231, 234 (N.D. 1980) (construing statute from NDCC)). It is not necessary to look beyond the words of this regulation.[2]

In addition to the illustrative nature of this list, subdivision (m) is in effect a residual, or catch-all provision. Since Medicare Part A and insurance payments fall within the definition of "any income which is received by the facility," *see* NDAC § 75–02–06–12(1), we refuse to adopt AHC's construction of the regulation. Absent a policy clarification contrary to our interpretation, we would find it

---

1. Part (j) of this section has since been amended to read: "'Therapy income'. Income from all therapy services will be offset to therapy costs." NDAC § 75–02–06–12(1)(j) (1992). The current rate setting applies this amended version of the

regulation. AHC represents to us that under this amended version, AHC does not contest the offset of Medicare Part A and insurance.

2. The Style and Grammar Guidelines of the *North Dakota Legislative Drafting Manual* states:

difficult for AHC to reasonably rely on this regulation to its detriment. The fact that subdivision (j) does not specifically name Medicare Part A and insurance as therapy income is not determinative of whether they are types of income which can be offset.

We are not persuaded by AHC's argument that the second sentence of subdivision (j) becomes meaningless under our interpretation of the first sentence. Our interpretation is consistent with the portion of subdivision (j) which provides that if the therapy income was not identified by source, that all therapy income would be offset. The regulation specifically excludes setoff of the established rate, income from payments made under the Job Training Partnership Act, and certain income from private pay residents. The second sentence provides that unless identified by source, these incomes may be offset.

For the above stated reasons we reverse.

VANDE WALLE, C.J., and LEVINE, SANDSTROM and MESCHKE, JJ., concur.

"An exhaustive definition uses the word *means,* while a partial definition uses the word *includes.*" The words "but are not limited to" which follow "include" are surplusage.