MANUFACTURERS HANOVER MORTGAGE CORPORATION v
SNELL

Docket No. 71822. Submitted August 21, 1984, at Detroit.—Decided
    May 7, 1985.

In November, 1978, Laverne and Terry Lee Snell obtained a
federally insured mortgage loan to purchase a home in the City
of Detroit. In November, 1979, the Snell mortgage was assigned
to Manufacturers Hanover Mortgage Corporation. The Snells
defaulted on the mortgage loan, and Manufacturers Hanover
foreclosed by advertisement. A sheriff's sale was held, and
Manufacturers Hanover was the successful bidder. After the
redemption period had expired, Manufacturers Hanover com-
menced summary proceedings to evict the Snells and recover
possession of the property. The defendants raised as a defense
that plaintiff had failed to forebear on enforcement of the
original obligation or offer to recast that obligation, that such
forebearance or recasting are required of lenders servicing
mortgages insured by the Federal Housing Administration of
the Department of Housing and Urban Development as set
forth in HUD's lenders handbook and the federal regulations
promulgated by HUD, that foreclosure on the mortgage was
therefore invalid, and that the summary proceedings for posses-
sion should be dismissed. The 36th District Court, Mary Ann
BaHani, J., held that it had jurisdiction to consider defendants'
equitable defense and that defendants' "mortgage servicing
defense" was a cognizable defense and entered a final order as
to the question of the district court's jurisdiction to consider
defendants' equitable defense in the eviction proceedings, but
held in abeyance trial of the matter. Plaintiff appealed to the
Wayne Circuit Court. The Wayne Circuit Court, Joseph B.
Sullivan, J., reversed, holding that the mortgage servicing
defense was not a cognizable defense in either law or equity.

REFERENCES FOR POINTS IN HEADNOTES
[1] 16A Am Jur 2d, Constitutional Law § 742.
[1, 3-5] 55 Am Jur 2d, Mortgages § 639.
[2, 5] 40 Am Jur 2d, Housing Laws and Urban Development § 6.
[3, 4] 55 Am Jur 2d, Mortgages § 858.

Laverne Snell appealed to the Court of Appeals by leave granted. *Held:*

1. The federal regulations and the provisions in the lenders handbook issued by HUD relative to servicing practices by lenders servicing federally insured mortgages cannot be said to be implicit terms in the mortgage contract between the mortgagor and mortgagee.

2. The validity of a foreclosure by advertisement may be judicially tested by the mortgagor by raising the question as a defense in an action for summary proceedings to recover possession of the property following foreclosure.

3. A district court has jurisdiction to hear and determine equitable claims relative to the validity of a foreclosure raised by a mortgagor in a summary proceeding by the mortgagee to recover possession of the mortgaged property following a foreclosure by advertisement.

4. Since the federal government did not make it mandatory that a lender servicing a federally insured mortgage grant forebearance relief to the mortgagor prior to foreclosure, Michigan courts should not under the guise of the exercise of their equitable powers make such relief a mandatory prerequisite for foreclosure. The mortgage servicing defense raised by defendants is not a cognizable defense which will defeat foreclosure by advertisement.

Affirmed.

1. MORTGAGES — FORECLOSURE — FORECLOSURE BY ADVERTISEMENT — DUE PROCESS.

Foreclosure by advertisement in Michigan is not a judicial proceeding but is rather a private remedy arising out of the mortgage contract between the mortgagor and mortgagee; foreclosure by advertisement does not constitute a state action for the purposes of due process protections (MCL 600.3201 *et seq.;* MSA 27A.3201 *et seq.).*

2. MORTGAGES — FEDERALLY INSURED MORTGAGES — MORTGAGE SERVICING PRACTICE REGULATIONS.

The federal regulations relative to servicing practices by lenders servicing federally insured mortgages cannot be said to be implicit terms in the mortgage contract between the mortgagor and the mortgagee (24 CFR 203.500-24 CFR 203.656).

3. MORTGAGES — FORECLOSURE — FORECLOSURE BY ADVERTISEMENT — SUMMARY PROCEEDINGS — EVICTION PROCEEDINGS.

A mortgagor may hold over after foreclosure by advertisement and may test the validity of the foreclosure sale by raising the

question of the validity of the foreclosure sale as a defense to a summary proceeding to recover possession of the property.

4. COURTS — DISTRICT COURTS — JURISDICTION — EQUITY — MORT-
GAGES — SUMMARY PROCEEDINGS.

   A district court has jurisdiction to hear and determine equitable claims and defenses raised by a mortgagor in a summary proceeding to recover possession of the mortgaged property following foreclosure by advertisement (MCL 600.8302[3]; MSA 27A.8302[3]; DCR 754.7[b][1]).

5. MORTGAGES — FORECLOSURE — FEDERALLY INSURED MORTGAGES —
MORTGAGE SERVICING PRACTICE REGULATIONS — EQUITY.

   Michigan courts should not, under the guise of the exercise of their equitable powers in the review of the validity of a foreclosure by advertisement, require that the mortgagee comply with the nonmandatory provisions of the federal mortgage servicing regulations before bringing foreclosure; accordingly, the failure of a mortgagee to assist the mortgagor in meeting the mortgage obligation by altering the payment terms of the mortgage agreement is not a cognizable defense to an action to recover possession of realty following a foreclosure by advertisement (24 CFR 203.614, subds [a] and [b][1]; 24 CFR 203.616[c]).

*Miller, Canfield, Paddock & Stone* (by *Gordon A. Becker)*, for plaintiff.

*Wayne County Neighborhood Legal Services* (by *Thomas C. Carey)*, for Laverne Snell.

Before: SHEPHERD, P.J., and MACKENZIE and P. NICOLICH,* JJ.

PER CURIAM. By delayed application for leave granted, defendants appeal from a Wayne County Circuit Court order reversing a decision of the 36th District Court. The circuit court found that the "mortgage servicing defense" (which challenges the validity of foreclosure proceedings) is not a cognizable defense to an action to recover possession of realty in Michigan. We affirm.

Defendants Laverne and Terry Lee Snell ob-

* Circuit judge, sitting on the Court of Appeals by assignment.

tained an FHA insured mortgage loan to purchase a home in the City of Detroit. Plaintiff obtained the mortgage by assignment from the original mortgagee in November, 1979. Defendants defaulted on the mortgage loan and plaintiff foreclosed by advertisement. A sheriff's sale was held on June 4, 1980, and plaintiff was the successful bidder. The redemption period expired on December 4, 1980. On January 12, 1981, plaintiff commenced summary proceedings to evict defendants and recover possession of the property. In their answer and counterclaim for affirmative relief, defendants raised the "mortgage servicing defense".

The gist of the "mortgage servicing defense" is the notion that an FHA lender has some duty to work with a defaulting FHA mortgagor in order to assist the mortgagor in meeting his obligations under the mortgage agreement by altering the payment terms of that agreement. The sources of these alleged duties are the regulations promulgated by the Department of Housing and Urban Development pursuant to 12 USC 1709 and the "lender's handbook" issued by HUD.

24 CFR 203.500 through 203.656 identify servicing practices which HUD considers acceptable for lenders servicing government insured mortgages. 24 CFR 203.500 provides, *inter alia:*

"Failure to comply with this subpart shall not be a basis for denial of insurance benefits but a pattern of refusal or failure to comply will be cause for withdrawal of a mortgagee's approval. It is the intent of the Department that no mortgagee commence foreclosure or acquisition of the property until the requirements of sections 203.600 through 203.656 or instructions issued pursuant to said sections have been complied with. The Department takes no position on whether a mortgagee's refusal or failure to comply with sections 203.640

through 203.656 is a legal defense to foreclosure; that is a matter to be determined by the courts."

The mandatory servicing requirements provided by the regulations are minimal. For FHA insured mortgages, the regulations require the lender "to take prompt action to collect amounts due from mortgagors to minimize the number of accounts in a delinquent or default status". 24 CFR 203.600. Lenders are required to give notice to each mortgagor in default. 24 CFR 203.602. Absent certain enumerated circumstances, the lender must make a reasonable effort to arrange a face-to-face interview with the mortgagor before three full monthly installments due on the mortgage are unpaid. 24 CFR 203.604. Absent certain enumerated circumstances, the lender shall not initiate foreclosure until three full monthly installments due under the mortgage are unpaid. 24 CFR 203.606. Lenders are required to permit reinstatement of the mortgage if the mortgagor tenders in a lump sum all amounts required to bring the account current. 24 CFR 203.608.

The other mortgage servicing provisions of the regulations, *i.e.,* "special forebearance relief" and "recasting" of the mortgage, are available only at the discretion of the lender. 24 CFR 203.614, subds (a) and (b)(1); 24 CFR 203.616(c); also see *Brown v Lynn,* 385 F Supp 986, 998 (ND Ill, 1974) (hereinafter *Brown I); Hernandez v Prudential Mortgage Corp,* 553 F2d 241 (CA 1, 1977).

In Michigan, foreclosure actions are equitable in nature. MCL 600.3180; MSA 27A.3180. However, foreclosure by advertisement, as was employed by the plaintiff in the case at bar, is not a judicial proceeding of any sort, *Northrip v Federal National Mortgage Ass'n,* 527 F2d 23 (CA 6, 1975), and does not involve "state action" for purposes of

the due process clause. US Const, Am XIV; *Cramer v Metropolitan Savings & Loan Ass'n,* 401 Mich 252, 259; 258 NW2d 20 (1977), *cert den* 436 US 958; 98 S Ct 3072; 57 L Ed 2d 1123 (1978). The theory underlying Michigan's foreclosure by advertisement scheme is that the provisions of the foreclosure by advertisement statute, MCL 600.3201 *et seq.;* MSA 27A.3201 *et seq.,* become a part of the contract between the mortgagor and the mortgagee. *Cramer v Metropolitan Savings & Loan Ass'n, supra,* p 259; *Peterson v Jacobs,* 303 Mich 329, 335; 6 NW2d 533 (1942).

Thus, in order for the "mortgage servicing defense" to be applicable to foreclosure by advertisement in Michigan, the provisions of the HUD regulations and handbook must somehow be implicit terms of a mortgage contract between plaintiff and defendants. Defendants have advanced no legal theory to support such a proposition, and if we were to develop one, we would be venturing afield of the foreclosure by advertisement scheme devised by the Legislature.

But that does not end our inquiry. The Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary proceeding. *Reid v Rylander,* 270 Mich 263, 267; 258 NW 630 (1935); *Gage v Sanborn,* 106 Mich 269, 279; 64 NW 32 (1895). Otherwise, the typical mortgagor who faces an invalid foreclosure would be without remedy, being without the financial means to pursue the alternate course of filing an independent action to restrain or set aside the sale. *Reid, supra,* p 267; see, also, 16 Michigan Law and Practice, Mortgages, § 174, pp 438-439. The mortgagor may raise whatever defenses are available in a summary eviction proceeding. MCL 600.5714; MSA 27A.5714; *Federal National Mortgage Ass'n v Win-*

*gate,* 404 Mich 661, 676, fn 5; 273 NW2d 456 (1979). The district court has jurisdiction to hear and determine equitable claims and defenses involving the mortgagor's interest in the property. MCL 600.8302(3); MSA 27A.8302(3); DCR 754.7(b)(1).

Even given the general availability of equitable defenses in foreclosure and summary eviction proceedings, we question whether the "mortgage servicing defense" is one which may be recognized by Michigan courts at all, given the current state of the law.

The federal courts have determined that the HUD lenders handbook, the foundation of the defense, is merely a statement of HUD policy, which does not have the force of law and which does not establish procedural prerequisites to foreclosure. *Brown I, supra,* p 998. The handbook and regulations "deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow". *Roberts v Cameron-Brown Co,* 556 F2d 356, 360 (CA 5, 1977).

In *Brown v Lynn,* 392 F Supp 559, 562 (ND Ill, 1975) (hereinafter *Brown II),* however, the court noted that its decision does not prevent foreclosure courts "from exercising their equity powers by refusing to grant foreclosure where mortgagors have flagrantly disregarded the forebearance provisions of the HUD handbook". The court reasoned:

"On the theory that the guidelines are sensible, equitable standards of conduct, consistent with, and issued in furtherance of, the national housing goals, foreclosure courts can, and in appropriate instances should, direct the parties to pursue and exhaust the alternatives to foreclosure enumerated in the Handbook.

Merely rubber-stamping mortgagees' foreclosure actions, when they have acted barely within the formal legal bounds of these loosely defined housing programs, will contribute further to the needless loss of homes and the creation of virtual ghost areas within our inner cities. Foreclosure courts need not woodenly perpetuate the national tragedy surrounding quick foreclosures to which we referred in our earlier opinion, but, where appropriate, they should require adherence to the policies and procedures prescribed by the Handbook." 392 F Supp 563.

Acting on the invitation of the court in *Brown II, supra,* the New York State trial courts have held that FHA lenders have an equitable obligation to follow the guidelines in the HUD handbook in the event of a FHA mortgagor's default. Failure to follow these guidelines will bar the lender from receiving the equitable relief sought in a foreclosure action. *Federal National Mortgage Ass'n v Ricks,* 83 Misc 2d 814; 372 NYS2d 485 (1975); see also *Government National Mortgage Ass'n v Screen,* 85 Misc 2d 86; 379 NYS2d 327 (1976). New Jersey and Florida courts have reached the same conclusion based on *Brown II. Associated East Mortgage Co v Young,* 163 NJ Super 315; 394 A2d 899 (1978); also see, *Heritage Bank, N A v Ruh,* 191 NJ Super 53; 465 A2d 547 (1983); *Cross v Federal National Mortgage Ass'n,* 359 So 2d 464 (Fla App, 1978).

No one doubts that the federal government could make compliance with the policies set forth in the handbook and regulations mandatory. To date, it has not. The handbook and regulations may contain "sensible, equitable standards", *Brown II, supra,* but that is no reason to make them mandatory. It is the role of the federal government to make and enforce federal housing policy. The dicta in *Brown II, supra,* may fairly be

dismissed as indicative of the district judge's personal frustration with the nation's housing problem. We must remember that, as judges, we lack authority to promulgate mortgage regulations under the guise of "equity" merely because we agree with an agency's nonbinding, interpretive statements of policy. *Rank v Nimmo,* 677 F2d 692, 698 (CA 9, 1982).

We see no defensible distinction between a mortgagee with a federally-guaranteed mortgage and one whose mortgage is not so guaranteed that would justify holding that a mortgagee acts "unconscionably" by not providing forebearance relief in the former case, but not in the latter. If the handbook and regulations contain "sensible, equitable standards of conduct", *Brown II, supra,* and that alone is sufficient to render them mandatory, then they would seemingly have to be applied across-the-board, federal guarantee or not.

For the same reason, we see no distinction in this regard among various types of foreclosure and summary eviction proceedings. Whether the mortgage servicing defense is raised in the context of an equitable foreclosure, a foreclosure by advertisement, or a summary eviction proceeding, by allowing that defense we would sanction application of our purely personal and political views as to federal housing policy and would give some mortgagors preferential treatment over others.

We therefore decline to recognize the mortgage servicing defense.

Affirmed.