# STATE OF MICHIGAN

# COURT OF APPEALS

FRANCIS KATULSKI and BELINDA
KATULSKI,

        Plaintiffs-Appellants,

v

CPCA TRUST I,

        Defendant-Appellee.

UNPUBLISHED
January 20, 2015

No.   313790
Lapeer Circuit Court
LC No.   11-044344-CH

---

CPCA TRUST I,

        Plaintiff-Appellee,

v

FRANCIS KATULSKI and BELINDA
KATULSKI,

        Defendants-Appellants.

No.   316360
Lapeer Circuit Court
LC No.   12-045179-AV

---

Before:  DONOFRIO, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

These consolidated appeals arise from a foreclosure by advertisement on real property owned by Francis and Belinda Katulski.

In Docket No. 316360, CPCA Trust I (CPCA) filed a complaint seeking to evict the Katulskis from their property following a foreclosure by advertisement. The district court entered a judgment awarding CPCA possession and the Katulskis appealed to the circuit court. The circuit court affirmed, and the Katulskis now appeal that ruling by leave granted.[1]  In Docket

---

[1] *CPCA Trust I v Katulski*, unpublished order of the Court of Appeals, entered January 29, 2014 (Docket No. 316360).

-1-

No. 313790, the Katulskis filed a separate action against CPCA in circuit court, alleging various deficiencies in the foreclosure process and the underlying mortgage. The circuit court granted CPCA's motion for summary disposition, and the Katulskis now appeal that ruling by right. For the reasons set forth below, we affirm in both appeals.

## I. STANDING

We first address the parties' dispute regarding whether the Katulskis had standing to contest the foreclosure by advertisement after the redemption period expired. Although the circuit court did not expressly rule on the standing question, in both underlying cases, it addressed the merits of the Katulskis' challenges to the foreclosure and, therefore, implicitly found that they possessed the requisite standing.[2]

In support of the proposition that a homeowner may challenge a foreclosure sale after the redemption period has expired, the Katulskis rely on *Mfrs Hanover Mtg Corp v Snell*, 142 Mich App 548, 553-554; 370 NW2d 401 (1985), in which this Court stated:

> *The Supreme Court has long held that the mortgagor may hold over after foreclosure by advertisement and test the validity of the sale in the summary [eviction] proceeding. Reid v Rylander*, 270 Mich 263, 267; 258 NW 630 (1935); *Gage v Sanborn*, 106 Mich 269, 279; 64 NW 32 (1895). Otherwise, the typical mortgagor who faces an invalid foreclosure would be without remedy, being without the financial means to pursue the alternate course of filing an independent action to restrain or set aside the sale. [*Reid*, 270 Mich at 267]. The mortgagor may raise whatever defenses are available in a summary eviction proceeding. MCL 600.5714 . . . . The district court has jurisdiction to hear and determine equitable claims and defenses involving the mortgagor's interest in the property. MCL 600.8302(3)[; MCR 4.201(G)(1)(a)(*ii*)]. . . . [Emphasis added, some citations omitted.]

Docket No. 316360 arose in the context of a district court summary eviction proceeding initiated by CPCA. On appeal to the circuit court, the Katulskis argued that CPCA lacked the authority to foreclose and violated MCL 600.3204(1)(d) and (3) when it failed to demonstrate that it had "record chain of title from the lender to the foreclosing party prior to the initiation of foreclosure" proceedings, given the existence of allegedly invalid assignments to CPCA and its predecessors in interest, and CPCA's failure to possess the promissory note issued by the Katulskis' lender. The Katulskis further asserted that the district court had erred in granting CPCA possession of the property on the basis of multiple fraudulently recorded documents. In the context of this summary eviction proceeding, the Katulskis had standing to raise their challenges to CPCA's interest in properly pursuing the statutory foreclosure by advertisement process. *Mfr Hanover Mtg Corp*, 142 Mich App at 553-554.

---

[2] "Whether a party has legal standing to assert a claim constitutes a question of law that we review de novo." *Heltzel v Heltzel*, 248 Mich App 1, 28; 638 NW2d 123 (2001).

CPCA characterizes as untimely the Katulskis' filing of their circuit court appeal. The Katulskis undisputedly failed to contest in the district court the August 8, 2011 judgment of possession until April 30, 2012, a date well beyond (1) the 10-day period that MCR 4.201(M) and MCR 4.201(N)(2) afforded them for challenging the judgment before the district court; and (2) the six-month limit that the Katulskis possessed for appealing to the circuit court under MCR 7.103(B)(6).[3] However, MCR 4.201(M) expressly exempts from the 10-day timeliness period for postjudgment challenges motions filed under MCR 2.612, which allows a party moving for relief from judgment because of fraud up to a year after entry of the judgment to seek relief. MCR 2.612(C)(1)(c) and (2). In calculating the timeliness of a party's circuit court appeal, MCR 7.101(B) and MCR 7.103(B) recognize that court rules or statutes prescribing other periods for pursuing an appeal, like MCR 4.201(M) and MCR 2.612(C)(2), may apply. Because the Katulskis filed their motion to set aside the judgment of possession within the one-year time limit prescribed in MCR 2.612(C)(2), we reject CPCA's suggestion that they untimely pursued relief.

After the expiration of the redemption period for preserving the Katulskis' real property interest, they filed an action in Docket No. 313790 that did not directly arise in the context of a summary eviction proceeding. While this Court has recognized that a homeowner is without standing to contest foreclosure by advertisement proceedings after the redemption period has expired, *Bryan v JP Morgan Chase Bank*, 304 Mich App 708, 713-715; 848 NW2d 482 (2014), as will be discussed below, the circuit court properly granted summary disposition in favor of CPCA and, accordingly, we decline to address the court's implicit standing decision. See *Klooster v City of Charlevoix*, 488 Mich 289, 310; 795 NW2d 578 (2011) ("an appellate court may uphold a lower tribunal's decision that reached the correct result, even if for an incorrect reason").

Accordingly, we conclude that the respective lower courts did not err by addressing the merits of the Katulskis' claims.

## II. FORECLOSURE BY ADVERTISEMENT

In both appeals, the Katulskis attack the foreclosure by advertisement regarding their property on identical grounds, specifically that CPCA did not qualify as a proper party to pursue foreclosure by advertisement because it neither had any interest in the indebtedness, MCL 600.3204(1)(d), nor a record interest in their mortgage, MCL 600.3204(3). According to the Katulskis, CPCA never obtained any interest in the mortgage or promissory note because (1) CPCA's assignor, the CWABS, II, LFT 2005-03 (CWABS II) trust, did not receive a valid assignment of the mortgage from Mortgage Electronic Registration Systems (MERS) due to its occurrence after the trust's closing date; (2) the assignment to CWABS II should have been in the name of the trust's depositor (CWABS, Inc.); (3) CPCA acknowledged not having an assignment from CWABS II; (4) an affidavit describing the lost assignment did not constitute a conveyance of an interest in real property; and (5) the affidavit attempting to assign a real

---

[3] Effective May 1, 2012, the Michigan Supreme Court rewrote the court rules governing appeals to the circuit court, MCR 7.101 *et seq*. 490 Mich clxii-ccxii (2011).

-3-

property interest to CPCA improperly bore the signature of CPCA's own attorney. The Katulskis further assert that the circuit court erred in neglecting to remand for further development of the facts surrounding the potential prejudice they endured because of the defective foreclosure by advertisement.[4]

Among the prerequisites to a valid foreclosure by advertisement proceeding, the Legislature included in MCL 600.3204 the following requirements, which are at issue in this case:

> (1) Subject to subsection (4), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> * * *
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.
>
> * * *
>
> (3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under Section 3216, evidencing the assignment of the mortgage to the party foreclosing the mortgage.

---

[4] In Docket No. 316360, the Katulskis contest the circuit court's affirmance of the district court's entry of a judgment of possession in favor of CPCA. To the extent that this appeal involves legal questions, we consider these de novo. *Elba Twp*, 493 Mich at 278. We review for clear error a circuit court's factual findings. *Moody v Home Owners Ins Co*, 304 Mich App 415, 446; 849 NW2d 31, lv gtd 853 NW2d 331 (2014), citing MCR 2.613(C). A factual finding qualifies as clearly erroneous if a review of the entire record leaves this Court "with the definite and firm conviction that a mistake has been made." *Id*. (internal quotation and citation omitted). Regarding Docket No. 313790, a motion premised on MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), we consider the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

## A. VALIDITY OF ASSIGNMENTS

The Katulskis attack the validity of two assignments in the record of title to CPCA. Our Supreme Court explained in *Bowles v Oakman*, 246 Mich 674, 678-679; 225 NW 613 (1929), that a debtor sometimes cannot challenge the validity of an assignment of a debt or instrument to which the debtor was not a party, stating:

> The assignor or indorser on negotiable instruments must protect his own interest, where he had been induced to assign or indorse through fraud; and *the maker cannot defend or set up matters of defense which only exist between the indorser and the indorsee.*
>
> *The maker of a promissory note cannot, in an action brought against him by the indorsee or transferee thereof, litigate questions that can properly arise only between the holder and his immediate indorser.* [Quotation marks and citation omitted; emphasis added.]

But as summarized in 6A CJS, Assignments, § 132:

> [*T*]*he debtor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void,* such as, the nonassignability of the right attempted to be assigned, or a prior revocation of the assignment. *The debtor may also question a plaintiff's lack of title or the right to sue.*
>
> * * *
>
> *Obligors of a claim may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice.* So, an obligor cannot raise the assignees' alleged acts of fraud towards the assignor as a defense to the assignees' claims against the obligor. The debtor cannot question the motive or purpose underlying the assignment, or introduce a defense that assignee occupied a fiduciary relationship to the assignor. [Emphasis added.]

See also *Woods v Ayres*, 39 Mich 345, 346-347 (1878) (explaining that obligors under a claim or debt to a company could not challenge, in a successor company's suit for payment on the claim, the successor company's ownership of the claim, because "[t]he conduct of the parties and the surrounding circumstances import that" the successor company owned the claim, no evidence suggested that the claim's original owner did not acquiesce, and no "evidence . . . [showed] an outstanding title").

### 1. MERS-CWABS II ASSIGNMENT

On August 26, 2005, the Katulskis received a loan from Decision One Mortgage Company, L.L.C. (Decision One), in the amount of $203,400, signed a promissory note documenting the debt to Decision One, and signed a mortgage identifying MERS as the mortgagee. The Lapeer County register of deeds recorded the mortgage on September 2, 2005.

On March 28, 2006, MERS assigned its interest in the mortgage to the Bank of New York, as trustee "for the certificateholders CWABS, II, Inc. LFT 2005-03," and the Lapeer County Register of Deeds recorded the assignment on April 13, 2006. In support of the Katulskis' arguments concerning the improper timing and form of the MERS-CWABS II assignment, the Katulskis rely on the terms of a March 1, 2005 pooling and service agreement (PSA) between CWABS, Inc. and other financial entities.

The Katulskis raise challenges to CPCA's interest in their mortgage and its right to pursue the foreclosure and eviction action, a matter the Katulskis have standing to dispute. 6A CJS, § 132. However, the Katulskis have not asserted or introduced any evidence suggesting that MERS ever objected to its assignment of the mortgage interest to CWABS II. *Woods*, 39 Mich at 346-347. In light of the Katulskis failure to offer evidentiary substantiation in support of their challenge to this assignment, the circuit court in both cases correctly rejected that any alleged PSA violations affected the validity of the MERS assignment to CWABS II in the context of this foreclosure by advertisement.

## 2. CWABS II-CPCA ASSIGNMENT

The Katulskis maintain that CPCA did not satisfy either MCL 600.3204(1)(d) or (3) because the record did not contain a valid conveyance of any interest in the mortgage or promissory note to CPCA. On May 27, 2010, the Lapeer County Register of Deeds recorded an "affidavit regarding lost or misplaced assignment" signed by Bill Koch, which attests, in relevant part:

> 1. That he/she is the Document Control Officer of Select Portfolio Servicing, Inc., formerly known as Fairbanks Capital Corp., the Custodian of the document which is the subject of this affidavit and the holder of that certain Note and Mortgage/Deed of Trust 08/26/2005 from Francis L. Katulski, a married man and Belinda Katulski, his wife in the original amount of $203,400.00 (hereinafter the "Mortgage/Deed of Trust" and "Note")[.]

> 2. The Mortgage/Deed of Trust was recorded . . . . in Lapeer, Michigan. The original Mortgagor/Grantee on the Mortgage/Deed of Trust was from Francis L. Katulski, a married man and Belinda Katulski, his wife to MERS as nominee for Decision One Mortgage Company, L.L.C., as beneficiary. . . .

> 3. That the Mortgage/Deed of Trust and Note was purchased by CPCA Trust I by its Attorney-in-Fact Select Portfolio Servicing, Inc. formerly known as Fairbanks Capital Corp., but the assignment from Bank of New York as trustee for the certificateholders CWABS, II, LFT 2005-03 to CPCA Trust I cannot be located for the recording[.]

> 4. That at all times CPCA Trust I has been the holder of the Mortgage/Deed of Trust and Note with full Authority to exercise the rights of a lender thereunder[.]

Although the Katulskis have standing to dispute CPCA's lack of any interest in their mortgage and its right to pursue the foreclosure, 6A CJS, § 132, they again have not suggested or

shown that CWABS II ever objected to the assignment of its mortgage interest to CPCA. *Woods*, 39 Mich at 346-347. The Katulskis likewise failed to complain or reference evidence that a party other than CPCA had an outstanding interest in the mortgage or note at the time of foreclosure that could put the Katulskis at risk of having to pay their mortgage debt more than once.[5] The circuit court did not err in ruling that CWABS II properly transferred to CPCA its interest in the Katulskis' mortgage.

## B. MCL 600.3204(3)

The circuit court also correctly rejected the Katulskis' insistence that MCL 600.3204(3) demanded the recording of an assignment in the form of an actual conveyance. The circuit court properly interpreted MCL 600.3204(3) as requiring only evidence of the foreclosing party's record chain of title interest in the real property. "If the party foreclosing a mortgage by advertisement is not the original mortgagee, *a record chain of title shall exist prior to the date of sale under Section 3216, evidencing the assignment of the mortgage to the party foreclosing the mortgage*." MCL 600.3204(3) (emphasis added). The foreclosure by advertisement statutes do not define the term "record chain of title," and we located no binding authority setting forth a definition. Because the phrase "chain of title" and the term "evidencing" have legal connotations, we reference a legal dictionary. *Johnson v Pastoriza*, 491 Mich 417, 436; 818 NW2d 279 (2012).

---

[5] Late in the litigation, the Katulskis' counsel proffered, without foundation, a copy of what purports to be a notice dated September 15, 2011 and addressed to Francis Katulski captioned "Notice of Sale of Ownership of Mortgage Loan." This notice states that on August 26, 2011, a date long after the relevant sheriff's sale, "[y]our loan" was transferred to a new creditor named "U.S. Bank National Association, as trustee for the Castle Peak 2011-1 Loan Trust, Mortgage Bank Notes, Series 2011 on 60 Livingston Avenue . . . St. Paul, MN." The Katulskis have not asserted before the trial court nor on appeal that they are indebted to this entity, if it is not CPCA, nor that this notice provides grounds to void the foreclosure. They only assert, without further explanation, that this notice "further complicate[s] and confuse[s] the issue." The notice references the loan servicer as Select Portfolio Servicing and provides contact information, but there is no record evidence that the Katulskis received any additional notices in this regard nor that they attempted to contact either the claimed assignee or the servicer to determine the meaning of this notice, despite it having allegedly been received in 2011. We conclude that in light of all these facts, the Katulskis have not established a question of fact whether the foreclosing party was also the holder of the debt for which the mortgage was security and have neither claimed nor established that that a party other than CPCA possessed an interest in the mortgage or the note at the time of the foreclosure that might place the Katulskis at risk of having to pay the debt secured by the mortgage more than once. The affidavit executed on May 24, 2010 on behalf of CPCA and recorded on May 27, 2010, provides that "at all times [it] has been the holder of the Mortgage/Deed of Turst *and Note* with full authority to exercise the rights of a lender thereunder." (Emphasis added).

*Black's Law Dictionary* (10th ed) defines "chain of title" as "[t]he ownership history of a piece of land, from its first owner to its present one." *Id.* at 278. *Black's Law Dictionary* contains the following relevant definition of "evidence": "Something (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact . . . ." *Id.* at 673. Because MCL 600.3204(3) involves the substantiation of interests in real property, the term "record" preceding "chain of title" references recording with a county register of deeds, which Michigan law generally requires to establish the priority of an interest in real property. MCL 565.28; MCL 565.29. In light of the definitions of the terms comprising MCL 600.3204(3), we conclude that the circuit court correctly interpreted MCL 6003204(3) as "only requir[ing] [recorded] evidence of the chain of title, not an actual assignment of the mortgage." We further conclude that the circuit court properly found that the statute was satisfied in light of (1) the recorded documentary evidence establishing the chain of title pursuant to which CPCA claimed its interest in the Katulskis' mortgage, specifically the mortgage assignment from MERS to CWABS II, and the affidavit documenting the assignment of the mortgage from CWABS II to CPCA, and (2) the recording of the affidavit of lost assignment in May 2010, well before CPCA sent notices of the foreclosure sale in November 2011.[6]

The Katulskis insist that the affidavit did not constitute a valid conveyance because it "contains no words of grant, . . . describes no property and designates no grantee," *First Nat'l Bank v Phillpotts*, 155 Mich 331, 335; 119 NW 1 (1909); the affidavit did not qualify as a conveyance[7] suitable for recording under MCL 565.201[8]; the affidavit violated the statute of frauds, MCL 566.106, because it purported to create an assignment of the Katulskis' mortgage without the requisite written signature by a representative of CWABS II assigning the mortgage; and the purported assignment cannot constitute marketable title under MCL 565.101.[9] However,

---

[6] The affidavit of lost assignment proclaims that "the Mortgage/Deed of Trust and Note was purchased by CPCA Trust I . . . , but the assignment from Bank of New York as trustee for the certificateholders CWABS, II, LFT 2005-03 to CPCA cannot be located for the recording." The mortgage reflected that Decision One initially held the promissory note. However, the record does not reflect from whom CPCA came into possession of the note, or whether CWABS II ever had possession of the note. Thus, a break in the record chain of title exists concerning the note. But the record still established the chain of title pursuant to which CPCA received its interest in the mortgage, which suffices to satisfy the language of MCL 600.3204(3).

[7] MCL 565.35 states that "[t]he term 'conveyance,' as used in this chapter [MCL 565.1 *et seq*.,]" means "every instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned . . . ."

[8] In MCL 565.201, the Legislature set forth formalistic prerequisites for recording an instrument with the register of deeds.

[9] MCL 565.101 provides, in relevant part:

> Any person, having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for 20 years for mineral interests and 40 years for other interests, shall at the end of the applicable period be considered to have a marketable record title to that interest . . . .

the Katulskis ignore caselaw holding that "[a]s mortgages are chattel interests in this State, [they] may be transferred without writing." *Nims v Sherman*, 43 Mich 45, 52; 4 NW 434 (1880); see also *Prime Fin Servs, LLC v Vinton*, 279 Mich App 245, 256; 761 NW2d 694 (2008) (explaining that "[u]nder Michigan law, a mortgage is not an interest in land," but instead constitutes "a lien on real property intended to secure performance or payment of an obligation"). Further, the Katulskis' arguments concerning the invalid assignment ring hollow in light of the language of MCL 600.3204(3), which requires only the recording of documents evidencing the unbroken chain of title pursuant to which CPCA obtained its interest in the mortgage. The foreclosure by advertisement statutes nowhere incorporate or reference the statutes cited by the Katulskis or the terms in those statutes, like "conveyance."

### C. MCL 600.3204(1)(d)

Contrary to the Katulskis' suggestion, the separation of the mortgage security interest from the underlying promissory note did not affect CPCA's authority to foreclose by advertisement under MCL 600.3204(1)(d). In *Residential Funding Co, LLC v Saurman*, 292 Mich App 321, 325-327; 807 NW2d 412 (2011), rev'd 490 Mich 909 (2011), this Court analyzed "whether MERS is an entity that qualifies under MCL 600.3204(1)(d) to foreclose by advertisement," in situations in which MERS held interests in mortgages but not the related promissory notes.[10] The relevant language of the mortgages regarding MERS's interest as only the mortgagee mirrors the language in the Katulskis' mortgage. *Id*. This Court rejected that the MERS interest in only the mortgages sufficed to allow MERS to foreclose under MCL 600.3204(1)(d). *Id*. at 330-337. However, our Supreme Court reversed this Court's decision in an order that reasoned as follows:

> As the Court of Appeals dissenting opinion explained, "pursuant to MCL 600.3204(1)(d), Mortgage Electronic Registration System (MERS) is 'the owner . . . of an interest in the indebtedness secured by the mortgage' at issue in each of these consolidated cases" because "(MERS') contractual obligations as mortgagee were dependent upon whether the mortgagor met the obligation to pay the indebtedness which the mortgage secured." [*Residential Funding*, 292 Mich App at 343-344, 348 (WILDER, J., dissenting).] *We clarify, however, that MERS' status as an "owner of an interest in the indebtedness" does not equate to an ownership interest in the note. Rather, as record-holder of the mortgage, MERS owned a security lien on the properties, the continued existence of which was contingent upon the satisfaction of the indebtedness. This interest in the indebtedness—i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness—authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d).*

\* \* \*

---

[10] The Katulskis thus incorrectly contend that "in *Saurman*, the mortgage and the note were never split apart."

*. . . [T]he Legislature's use of the phrase "interest in the indebtedness" to denote a category of parties entitled to foreclose by advertisement indicates the intent to include mortgagees of record among the parties entitled to foreclose by advertisement,* along with parties who "own[ ] the indebtedness" and parties who act as "the servicing agent of the mortgage." MCL 600.3204(1)(d). . . . [*Residential Funding Co, LLC v Saurman,* 490 Mich 909, 909-910; 805 NW2d 183 (2011) (emphasis added).]

In this case, the record established that CPCA at least possessed the record interest in the Katulskis' mortgage. Because mortgagees of record come within the "category of parties entitled to foreclose by advertisement," *Saurman*, 490 Mich at 910, we conclude that the circuit court properly rejected the Katulskis' contentions that CPCA could not foreclose by advertisement without any interest in the related promissory note.

## D. PREJUDICE

Even assuming that the foreclosure on the Katulskis' home did not conform to MCL 600.3204(1)(d) and (3), they have not alleged and cannot prove prejudice sufficient to warrant setting aside the foreclosure. In *Diem v Sallie Mae Home Loans, Inc*, ___ Mich App ___; ___ NW2d ___ (Docket No. 317499, issued October 16, 2014), slip op at 4, this Court examined the standard of prejudice that a mortgagor must demonstrate to justify setting aside a foreclosure by advertisement:

Our Supreme Court identified the substantive requirements for a mortgagor to challenge a foreclosure by advertisement in *Kim* [*v JPMorgan Chase Bank, NA*, 493 Mich 98, 114; 825 NW2d 329 (2012)]. The *Kim* Court held that "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*." *Id*. at 115. . . . The *Kim* decision established that a mortgagor seeking to set aside a foreclosure by advertisement must allege facts to support three essential aspects of a claim: (1) fraud or irregularity in the foreclosure procedure; (2) prejudice to the mortgagor; and (3) a causal relationship between the alleged fraud and irregularity and the alleged prejudice, i.e., that the mortgagor would have been in a better position to preserve the property interest absent the fraud or irregularity. See *Kim*, 493 Mich at 115-116.

This Court in *Diem*, *id*. at 4, further quoted Justice Markman's discussion of circumstances to consider in weighing potential prejudice:

"Although a nonexhaustive listing, some of the factors that might be relevant in [demonstrating prejudice] would include the following: whether plaintiffs were 'misled into believing that no sale had been had,' *Kuschinski v Equitable & Central Trust Co*, 277 Mich 23, 26; 268 NW 797 (1936); whether plaintiffs 'act[ed] promptly after [they became] aware of the facts' on which they based their complaint, *id*.; whether plaintiffs made an effort to redeem the property during the redemption period, *Sweet Air Investment, Inc v Kenney*, 275 Mich App 492, 503; 739 NW2d 656 (2007)[, lv den 480 Mich 990 (2007)]; whether plaintiffs were 'represented by counsel throughout the foreclosure

process,' *Jackson Investment Corp v Pittsfield Prod, Inc*, 162 Mich App 750, 756; 413 NW2d 99 (1987) . . . ." [*Kim*, 493 Mich at 121 (MARKMAN, J., concurring).]

The Katulskis acknowledge having last made payments toward a modified mortgage loan in March 2010. Although they attribute to their loan servicer an inexplicable rejection of their payments, the Katulskis have not presented or proffered evidence substantiating this assertion. They also do not dispute receiving in March 2010 a notice of their default and information regarding the opportunity to seek an additional modification or other assistance, which MCL 600.3204(4)(a) and MCL 600.3205a(1) formerly required.[11] They further concede that in November 2010, CPCA published a notice of a scheduled sheriff's sale of their property. The Katulskis allowed the redemption period to expire on June 8, 2011 without taking action to protect their property interest, and first challenged the foreclosure in the eviction action. The Katulskis have never suggested that they desired to or could have obtained funding that would have permitted them to outbid CPCA at the sheriff's sale. Under these undisputed circumstances, the Katulskis cannot prove that anyone "misled [them] into believing that no sale had" occurred, *Kuschinski*, 277 Mich at 26, they "timely . . . challeng[ed] the validity of the foreclosure sale" or undertook any "effort to redeem or take any action until well after the redemption period had run[,]" *Sweet Air Inv, Inc*, 275 Mich App at 503.

They also failed to specifically explain how any defect in the foreclosure by advertisement impeded their ability to protect their property interest. *Diem*, slip op at 4. On appeal, the Katulskis offer the following examples of prejudice:

> [T]he Katulskis' property has been taken illegally and fraudulently, they have incurred tens of thousand [sic] of dollars in attorney fees and costs needlessly, they have been threatened with expulsion from the premises with public humiliation, and they are being set up to lose there [sic] investment in and equity under the ownership of the subject premises.

Despite these allegations, the Katulskis have failed to identify a specific connection between a purported defect in the foreclosure by advertisement and the alleged prejudice. *Id*. at 5. Even accepting their assertions that New York law rendered void the MERS-CWABS II assignment and placed into question CPCA's interests in their mortgage, they offer only speculation that some unidentified entity might own an interest in their mortgage, and they fail to suggest precisely how they would have occupied "a better position to preserve their interest in the property absent . . . failure to comply with MCL 600.3204." *Kim*, 493 Mich at 116; see also *Diem*, slip op at 5 (observing that the "plaintiff has not alleged any facts that our Supreme Court suggested might support the prejudice element of a wrongful foreclosure claim," and failed to substantiate "how or why the foreclosure initiated by JPMorgan Chase—rather than another entity—precluded [him] from challenging the foreclosure"). Even accepting the Katulskis' argument that "the fraud and statutory fraud alleged has precluded [them] from asserting defenses to the possession and foreclosure action," they entirely fail to explain how these defects

---

[11] The Michigan Legislature has since repealed MCL 600.3204(4), see 2014 PA 125 (effective June 19, 2014), and MCL 600.3205a, see 2012 PA 521 (effective June 30, 2013).

-11-

in the foreclosure adversely impacted their ability to assert any specific defenses. *Diem*, slip op at 5-6. We conclude that, in light of the Katulskis' nonspecific claims of prejudice and their failure to "provide some independent evidence that a factual dispute exists" concerning the question of prejudice, no reasonable likelihood exists that additional discovery might yield support for their claims of prejudice. *Id*. at 6 (internal quotation and citation omitted).

## E. UCC VIOLATION

The Katulskis contend that CPCA never established its possession of either the promissory note or any interest in their mortgage and that CPCA lacked the authority to enforce the note in the foreclosure proceeding because it never possessed the note as contemplated by MCL 440.3301. According to the Katulskis, the record also demonstrated that CPCA was not a "holder in due course" of the note, MCL 440.1201, and CPCA did not satisfy MCL 440.9203(2), which provides that enforcement of a security interest can occur only if it has given value for the note, among other requirements that do not exist in this case.

The Katulskis confuse or seek to blur the distinctions between a mortgage and the related promissory note that Michigan law recognizes. As our Supreme Court summarized in *Saurman*, 490 Mich 909, "established legal principles governing Michigan's real property law, and specifically foreclosure by advertisement," envision that "'the mortgage and the note are to be construed together.'" *Id*., quoting *Guardian Depositors Corp v Wagner*, 287 Mich 202, 208; 283 NW 29 (1939). However, the Supreme Court in *Saurman* continued to explain, "'It has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands. . . . The choice of a mortgagee is a matter of convenience.'" *Id*. at 910, quoting *Adams v Niemann*, 46 Mich 135, 137; 8 NW 719 (1881).

Although a relationship exists between a mortgage given to secure a debt and the promissory note evidencing the debt, the foreclosure by advertisement statutes plainly authorize a foreclosure when so contemplated by the terms of the mortgage alone. In MCL 600.3201, the Legislature provided:

> Every mortgage of real estate, which contains a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner specified in this chapter. However, the procedures set forth in this chapter shall not apply to mortgages of real estate held by the Michigan state housing development authority.

The foreclosure by advertisement statutes reference the related promissory note in MCL 600.3204(1)(d), which permits a foreclosing party to be "either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage."

Further, the UCC provisions invoked by the Katulskis relate exclusively to a promissory note or other negotiable instrument, and have nothing to do with the related mortgage or foreclosure. The only portion of the UCC even referencing real estate liens appears in the UCC chapter governing secured transactions, MCL 440.9101 *et seq*. But a reading of MCL

440.9109(4) evidences that this article does not apply to a simple mortgage interest in real property, like the Katulskis' mortgage. The statute provides:

> This article does not apply to any of the following:
>
> * * *
>
> (k) *The creation or transfer of an interest in* or lien on *real property*, including a lease or rents thereunder, except to the extent that the provision is made for 1 or more of the following:
>
> (*i*) Liens on real property in sections 9203 and 9308.
>
> (*ii*) Fixtures in section 9334.
>
> (*iii*) Fixture filings in sections 9501, 9502, 9512, 9516, and 9519.
>
> (*iv*) Security agreements covering personal and real property in section 9604.

MCL 440.9102 defines for purposes of the UCC—secured transactions: a "mortgage" as "a consensual interest in real property, including fixtures, which secures payment or performance of an obligation," MCL 440.9102(bb); a "lien creditor" as "[a] creditor that has acquired a lien on the property involved by attachment, levy, or the like," MCL 440.9102(yy)(*i*); "[a]n assignee for benefit of creditors from the time of the assignment," MCL 440.9102(yy)(*ii*); "[a] trustee in bankruptcy from the date of the filing of the petition," MCL 440.9102(yy)(*iii*); and "[a] receiver in equity from the time of appointment." MCL 440.9102(yy)(*iv*). The definitions clarify that none of the exceptions in 440.9109(4)(*i*)-(*iv*) apply to the Katulskis' mortgage.

### F. MORTGAGE CONTRACT VIOLATION

The Katulskis also raise two purported violations of the mortgage terms. In the Katulskis' estimation, the mortgage contemplated that MERS could take action regarding the mortgage, but only at the request of the lender or its assigns. And, because the record contained no indication that the lender ever authorized MERS to assign its interest in the mortgage, MERS invalidly purported to assign its mortgage interest.

The Katulskis additionally complain that a separate paragraph of the mortgage mandated that the interests in the mortgage and the promissory note be sold together. And, given that CPCA never obtained any interest in the mortgage or note, it improperly foreclosed on the Katulskis' property.[12]

---

[12] Because the Katulskis did not raise this argument in the circuit court, we review it for plain error affecting substantial rights. *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007), aff'd 480 Mich 19; 745 NW2d 754 (2008).

The Katulskis' preserved assertion regarding MERS's authority to assign under the mortgage involves a legal question of contract interpretation. *Stuart v Chawney*, 454 Mich 200, 210; 560 NW2d 336 (1997). Whether the language of a contract qualifies as ambiguous is a question of law. If the contract language is clear and unambiguous, its meaning also is a question of law. However, when the contract language is unclear or susceptible to multiple meanings, its interpretation becomes a question of fact. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998).

The Katulskis have not established that the MERS assignment of its interest in the mortgage violated the terms of the mortgage. The mortgage introduced MERS in the definition section as "a corporation . . . acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this instrument." The provision on which the Katulskis rely in support of the argument that MERS could exercise its authority only after receiving directions from the lender appears under the heading "transfer of rights in the property":

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to MERS (*solely as nominee for Lender and Lender's assigns*) and to the successors and assigns of MERS, with power of sale, the following described property . . . .

> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument. [Emphasis added.]

The following relevant definitions of "nominee" appear in *Black's Law Dictionary* (10th ed): "*A person designated to act in place of another*, usu. in a very limited way," or "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Id*. at 1211 (emphasis added). We conclude that the Katulskis' assertion ignores the definition of a nominee and the mortgage language investing MERS with the authority to act for the lender with respect to the mortgage. Furthermore, the Katulskis offer no legal authority supporting their contention. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (a party who offers "no argument or citation to authority in support of its contention" on appeal abandons his appellate claims).

In the Katulskis' unpreserved claim of error, they submit that ¶ 20 of the mortgage's uniform covenants precluded assignment of the mortgage without the promissory note. Paragraph 20, entitled "sale of note; change of loan servicer; notice of grievance," states in relevant part: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." The Katulskis interpret this sentence as authorizing sales of the promissory note only when accompanied by the mortgage.

We conclude that the language plainly contemplates that the mortgage, or the note, or a partial interest in the note can be transferred multiple times without notice to the Katulskis, consistent with the Michigan caselaw summarized in *Saurman*, 490 Mich at 909-910:

> [T]he Court of Appeals' conclusion . . . is inconsistent with established legal principles governing Michigan's real property law, and specifically foreclosure by advertisement. "Under the settled law of this State, the mortgage and the note are to be construed together." *Guardian Depositors Corp of Detroit v Wagner*, 287 Mich 202, 208; 283 NW 29 (1939). "The rule is well-settled that ... the mortgagee has a lien on the land to secure the debt." *McKeighan v Citizens Commercial & Sav Bank of Flint*, 302 Mich 666, 670; 5 NW2d 524 (1942). *"It has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands. . . . The choice of a mortgagee is a matter of convenience."* *Adams v Niemann*, 46 Mich 135, 137; 8 NW 719 (1881). See also *Canvasser v Bankers Trust Co of Detroit*, 284 Mich 634, 639; 280 NW 71 (1938). Indeed, in interpreting predecessor foreclosure-by-advertisement statutes, in cases in which the mortgagee had transferred a beneficial interest, but retained record title, this Court has unanimously held that "(o)nly the record holder of the mortgage has the power to foreclose; the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security." *Arnold v DMR Fin Servs, Inc*, 448 Mich 671, 678; 532 NW2d 852 (1995); see also *Feldman v Equitable Trust Co*, 278 Mich 619, 624-625; 270 NW 809 (1937). [Emphasis added.]

Consequently, the Katulskis have not established a plain or other error involving mortgage uniform covenant ¶ 20.

## G. FRAUD

The Katulskis assert that, in both cases, they introduced evidence of CPCA's fraud sufficient to justify setting aside the foreclosure sale. They specifically argue that records showed that CPCA falsely claimed to possess an interest in the Katulskis' property because (1) MERS could not assign the mortgage without assigning the note, which it never owned, and thus MERS conveyed no interest in the mortgage to the CWABS II trust; (2) the PSA prevented CWABS II from receiving a valid mortgage assignment; (3) the affidavit of lost assignment was not a conveyance; and (4) no evidence suggested that CPCA ever received a promissory note properly negotiated under the UCC. According to the Katulskis, because CPCA had knowledge of these impediments to its capacity to foreclose by advertisement, it fraudulently filed the MERS-CWABS II assignment, the affidavits falsely asserting some right in the Katulskis' real estate, and the statement of compliance, in violation of the common law and statutes pertaining to fraud.

In *Roberts v Saffell*, 280 Mich App 397, 403; 760 NW2d 715 (2008), aff'd 483 Mich 1089 (2009), this Court reiterated the elements for establishing a common-law fraud claim:

(1) [T]he defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

Our review of the record does not substantiate the Katulskis' averments that CPCA falsely claimed to possess an interest in their property. As discussed previously, the record substantiates that CPCA possessed an interest in the Katulskis' mortgage sufficient to justify its pursuit of the foreclosure by advertisement because (1) Michigan law permits MERS to transfer an interest in a mortgage unaccompanied by the promissory note, *Saurman*, 490 Mich 910-911; (2) even assuming that the Katulskis have standing to complain about violations of PSA terms, they failed to substantiate that any PSA violation occurred that could have rendered the MERS-CWABS II assignment invalid; and (3) the affidavit documenting the terms of the lost mortgage assignment from CWABS II to CPCA sufficiently proved CPCA's interest in the Katulskis' mortgage to allow it to foreclose by advertisement. Therefore, the Katulskis failed to demonstrate that any of the challenged filings regarding CPCA's interest in their mortgage contained a falsehood, or a material issue of fact concerning the other elements of fraud.

## III. RES JUDICATA

The Katulskis argue that the circuit court erred in finding that res judicata barred them from contesting the foreclosure in Docket No. 313790, their separate circuit court action. They additionally assert that res judicata does not apply because CPCA and its agents publically recorded false, sworn documents regarding assignments of interests in the Katulskis' property, and these actions prevented the Katulskis from disputing the lack of any valid assignment to CPCA Trust I in the prior district court eviction action, Docket No. 316360.[13]

In Michigan, "[t]he doctrine of res judicata [generally] precludes relitigation of a claim . . . predicated on the same underlying transaction that was litigated in a prior case."

---

[13] We consider de novo the applicability of the claim preclusion doctrines collateral estoppel and res judicata. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001). We also review de novo a circuit court's decision regarding a motion for summary disposition pursuant to MCR 2.116(C)(7) to determine whether the moving party was entitled to judgment as a matter of law. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). We must consider the "affidavits, together with the pleadings, depositions, admissions, and documentary evidence . . . submitted by the parties." MCR 2.116(G)(5). In reviewing a motion under subrule (C)(7), we "consider all documentary evidence and accept the complaint as factually accurate unless affidavits or other documents presented specifically contradict it." *Shay v Aldrich*, 487 Mich 648, 656; 790 NW2d 629 (2010).

*Duncan v State*, 300 Mich App 176, 194; 832 NW2d 761 (2013). "The doctrine . . . applies not only to facts previously litigated, but also to points of law necessarily adjudicated in determining and deciding the subject matter of the litigation." *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 401; 509 NW2d 829 (1993). For res judicata to apply, the following elements must exist: (1) the decision of a prior action on the merits, (2) "the prior decision resulted in a final judgment, (3) both actions involved the same parties or those in privity with the parties, and (4) the issues presented in the subsequent case were or could have been decided in the prior case." *Duncan*, 300 Mich App at 194.

However, in MCL 600.5750, the Legislature explained that "[t]he remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory. A judgment for possession under this chapter does not merge or bar any other claim for relief . . . ."

> In *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 576-577; 621 NW2d 222 (2001), our Supreme Court stated that although a summary eviction judgment does not bar other claims and remedies, it is "conclusive on the narrow issue of whether the eviction was proper." In other words, a district court judgment is res judicata on the issue of who has the right to possess the premises, because that question is actually litigated in the district court. *Id*. at 574-577. Thus, where ... no claim for damages is asserted in the district court, the district court judgment is conclusive only on the question of who has a right to possess the premises. [*1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 530; 773 NW2d 57 (2009).]

We conclude that the circuit court correctly ruled that res judicata barred the Katulskis' attacks on the foreclosure in Docket No. 313790. When CPCA sought summary disposition on the basis of res judicata, the district court's August 8, 2011 judgment awarding it possession of the real property constituted a final decision on the merits. *City of Troy v Hershberger*, 27 Mich App 123, 127; 183 NW2d 430 (1970) (explaining that a "judgment pending on appeal is deemed res judicata"). The district court action also involved the same parties who participated in LC Docket No. 313790, the subsequent and separate circuit court action. The Katulskis' separate circuit court action challenging the foreclosure process involved legal "issues . . . [that] were or could have been decided in the prior" district curt summary proceeding, *Duncan*, 300 Mich App at 194, specifically, CPCA's compliance with the statutes governing foreclosure by advertisement and its entitlement to possession of the real property. *LaFayette East Coop, Inc*, 284 Mich App at 530. In the summary possession action, the Katulskis disputed that CPCA had complied "with the Michigan [s]tatutes regarding foreclosure by advertisement and thus are not entitled to possession of the property." In April 2012, the Katulskis filed their motion to set aside the judgment of possession on the basis of fraud, but the district court did not specifically rule on the merits of the motion. The summary possession action did address and decide whether CPCA properly pursued foreclosure by advertisement and was entitled to possession of the property, and the Katulskis attacked the foreclosure on the same grounds asserted in that prior action.

With respect to the Katulskis' contention that fraud by CPCA precluded the operation of res judicata, the Michigan Supreme Court explained as follows in *Prawdzik v Heidema Bros, Inc*, 352 Mich 102, 111; 89 NW2d 523 (1958):

> Where a judgment on the merits is rendered in favor of the defendants, the plaintiff is precluded from subsequently maintaining an action on the same cause of action although he presents a ground for the relief asked other than those presented in the original action, *except where the defendant's fraud or misrepresentation prevented the plaintiff from presenting such other ground in the original action.* [Internal quotations and citations omitted, emphasis added.]

Because the Katulskis' allegations of fraud involved documents publicly recorded by the register of deeds regarding their residence, and publically filed documents governing trusts, they did not establish that fraud by CPCA "prevented [the Katulskis] from presenting" their fraud claims in the prior summary eviction proceeding. *Id*.

Accordingly, the circuit court did not err by granting CPCA's motion for summary disposition on res judicata grounds.[14]

Affirmed.

/s/ Pat M. Donofrio
/s/ Karen Fort Hood
/s/ Douglas B. Shapiro

---

[14] Assuming, arguendo, that any of the Katulskis' arguments survived res judicata, the circuit court did not err by granting summary disposition in favor of CPCA for the reasons discussed in Section II of this opinion.